In the Matter of Bolivar Barreto **PIETRI, Julia Emmanuelli d/b/a Muebleria Casa Paris, Debtors.**

**BORG WARNER ACCEPTANCE CORPORATION INTERNATIONAL, LTD., Plaintiff-Appellee,**

v.

**Bolivar Barreto PIETRI, Julia Emmanuelli d/b/a Muebleria Casa Paris, Defendants-Appellants.**

Bankruptcy No. 78–253/254.
Civ. No. 79–1732 (GG).

United States District Court, D. Puerto Rico.

June 28, 1982.

Meyer Menis, Hato Rey, P. R., for plaintiff-appellee.

Charles A. Cuprill-Hernández, Ponce, P. R., for defendants-appellants.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is an appeal arising out of an effort by appellants, Bolivar Barreto Pietri and Julia Emmanuelli d/b/a Muebleria Casa Paris to obtain reversal of an Order of the Bankruptcy Court for the District of Puerto Rico dated June 20, 1979, denying appellants' motion questioning the validity of the interest and finance charges claimed by appellee, Borg Wagner Acceptance Corporation International, Ltd. (BWAC) pursuant to a stipulation and agreement entered into by the parties. The aforementioned Order was appealed and on November 29, 1979 the late Chief Judge José V. Toledo remanded for a clarification of the conclusions reached by the Bankruptcy Judge: that the Usury Act (10 L.P.R.A. 998) does not apply to a lien executed under the Factors' Lien Act. Also remanded for clarification was whether or not a factor's lien existed in the present case.

Pursuant to the above remand, the Bankruptcy Judge clarified his earlier order and determined that a valid factor's lien existed. He also concluded that the local statute against usury does not apply to factors' liens.

After reviewing the entire record of this case, including the legal memoranda submitted, we find and conclude as follows:

On September 13, 1978 plaintiff-appellee, BWAC filed a complaint against appellants alleging, in synthesis, that on December 29, 1977 co-debtor Bolivar Barreto Pietri had constituted a factors' lien in BWAC's favor over his entire inventory, whether then existing or thereafter acquired, and the proceeds thereof to secure the payment to BWAC of said debtor's debts. It was further alleged that the filing of debtor's petition in those proceedings constituted an act of default under the factors' lien agreement. Relief was requested from the automatic stay of Rule 11–44 of Bankruptcy Procedure, in order to proceed with the foreclosure of its lien.

On October 11, 1978 debtors-appellants filed an answer to BWAC's complaint denying the existence or validity of the factor's lien. Debtors denied the averments of the complaint and specifically stated that the factors' lien referred to in the complaint was entered into to guarantee loans that could have been made by BWAC to co-debtor Bolivar Barreto, and that in relation to said loans appellants did not owe appellee any amount at the time of the filing of the complaint, and, as such, none of defendants' property was subject to the provisions of the factors' lien.

Thereafter on October 26, 1978, the parties herein and Mr. Ramón H. Ortiz, the then Senior Co-Trustee previously appointed by the court, entered into a stipulation and agreement which, after a hearing on

November 14, 1978, was approved by the Court.

The stipulation included *inter alia*, the admission of debtors that BWAC's pre-petition factors' lien was valid; that it extended over debtors' entire inventory (including new inventory acquired thereafter with proceeds thereof) and that it secured all of debtors' liabilities and obligations to BWAC. Moreover, the stipulation provided that debtors were granting BWAC a new factors' lien over all its merchandise thereafter acquired, to secure their obligation to BWAC thereafter acquired, and that they would execute all additional documents to record and/or perfect such factor lien.

The stipulation also stated that the parties were in agreement as to the amount of the existing indebtedness and provided for a payment plan. Finally, it provided for the accrual of interest charges on the existing indebtedness and on the new advances to be made by BWAC thereunder, at a rate which may at any time "be equal to four percent (4%) over and above the prime interest rate charged by the Citibank, N.A. at its New York office".

On November 14, 1978 defendants and plaintiff-appellee BWAC executed a "Notice of Creation of Factor's Lien" before a notary which was duly recorded in the Registry of Property.

Thereafter a motion was filed by BWAC alleging that the debtors had defaulted on the stipulation. A hearing was held on April 3, 1979, whereupon the court appointed Mr. Tomas Padilla as Operating Receiver. The hearing was continued several times.

At a hearing held on May 9, 1979, the debtors and the Operating Receiver questioned the validity of the interest rates and finance charges set forth in the stipulation, as being in violation of the laws of the Commonwealth of Puerto Rico, specifically, Law number 1 of October 15, 1973 ("Act No. 1") and the regulations issued thereunder. They further alleged that the maximum interest rates that could be charged are those set forth in Regulation Number 15, which was effective on the date that the stipulation was executed, any excess there-

of not being demandable. They did not raise the issue of existence of the factors' lien.

The matter was taken under advisement by the Bankruptcy Judge and the parties were ordered to submit simultaneous briefs in support of their respective positions.

Upon consideration of all the above, the bankruptcy court denied appellants' motion and this appeal followed.

■ The findings made by the bankruptcy judge should not be disturbed by us unless clearly erroneous, *Re Baldwin*, 578 F.2d 293 (10th Cir. 1978); or unless there is "most cogent evidence of mistake or miscarriage of justice." *Slodov v. United States*, 552 F.2d 159 (6th Cir. 1977), rev'd. on other grounds, (436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed. 251).

With these principles in mind, we shall now address the issue of whether a valid factors' lien contract was indeed entered into by the parties in the present case.

The Factor's Lien Act (10 LPRA 551 *et seq.*) provides what a document must contain in order to establish the existence of a factor's lien:

"(a) The name of the factor, the name under which the factor does business if conducted under a name other than his own, the principal place of business of the factor in Puerto Rico, or if none, said place outside of Puerto Rico; and if the factor is a partnership or association, the name of the partners...

(b) The name and address of the debtor, and the nature or legal character of the interest of such person in the materials, goods in process, merchandise and accounts receivable.

(c) The general character of the property or credits subject to the lien and the period of time during which loans or advances may be made by the factor to the debtor under the terms of the factoring contract providing for such loans and advances for such lien."

■ Considering the aforementioned requirements, we agree with the bankruptcy

judge that there is no doubt that the language of the stipulation is sufficient to constitute a post-petition factor's lien.[1] Clearly, subsection (a) of the stipulation incorporates by reference the validity and the terms of the pre-petition factor's lien entered into by the parties on December 27, 1977. (See Exhibit C of debtors-appellants's motion of June 1, 1979).

Moreover, a simple examination of the pre-petition factor's lien of December 29, 1977 reveals that the first paragraph therein includes the factor's name, the name under which it conducts business, and its address at its principal place of business, as required by section 552(a).

Additionally, the first paragraph of the pre-petition factor's lien also states the name and address of the debtor and subdivision 1(a) asserts the nature of its interest in the materials or merchandise, as required by section 552(b).

Finally, the property subject or that could become subject to the lien is outlined in section 3 of pre-petition factor's lien. Also, the period of time during which loans may be made by the factor is provided for by section 2(c) and (d). Thus, compliance with section 552(c) is also achieved.

We note that Section 10 of the Factor's Lien Act dictates that "this chapter shall be liberally interpreted in order that its purposes may be achieved in the most effective manner. A substantial compliance with its several provisions shall be sufficient for the validity of a lien..."

Hence, we find that a valid factor's lien has been constituted between the parties herein.

The remaining issue to be decided by this court is whether or not the defense of usury as contained in the local statute can be raised when the matter involves a factors' lien contract executed in accordance with the Factor's Lien Act, 10 LPRA, Section 551 et seq.

The crucial section of the Factor's Lien Act which is the subject of the present controversy, 10 LPRA § 559 provides as follows:

"§ 559: Discounts not considered usurious

1. The stipulation and agreement of October 26, 1978 in its pertinent provisions reads as follows:

"TERMS AND CONDITIONS"

"(a) Debtor admits the validity of BWAC's factor lien of December 29, 1977 which extends over Debtor's entire inventory of goods and merchandise and secures all of the Debtor's liabilities and obligations to BWAC, and that such factor lien extends also to inventory subsequently purchased by Debtor with proceeds of the sale or disposition of inventory encumbered by said factor lien.

(b) BWAC is willing to grant Debtor a credit line (hereafter "the Wholesale Credit Line") of $80,000.00 for the financing of Debtor's wholesale purchases of inventory . . .

(c) The finance charges applicable to any such advances made by BWAC shall be as follows:

(i) an Initial Service Charge of one percent (1%) of the amount of the advance, payable upon receipt of the respective supplier's invoice; and

(ii) an interest charge computed on the average daily outstanding balance at a fluctioning interest rate which on each day shall be equal to four percent (4%) over and above the prime interest rate charged by the Citibank, N.A. (First National City Bank) at its New York Office, which interest charge shall be payable by Debtor to BWAC as of the end of each calendar month during the five working days thereafter.

(j) As security for Debtor's compliance of its obligations and payment of all amounts to be hereafter advanced by BWAC and charges due thereon under the Wholesale Credit Line, Debtor hereby agrees to, with the consent of your Senior Co-Trustee, and subject to the approval of this Stipulation by the Bankruptcy Court, does hereby grant to BWAC a Factor Lien over all of its merchandise hereafter acquired, and agrees to execute all additional documents necessary for the recordation and/or perfection of such factor lien.

(k) The Total Liquid Debt at Filing, in the amount of $71,894.00 shall be designated hereafter "the Refinance Account" and such account shall be credited with unearned finance charges and adjusted for errors.

(l) The Refinance Account shall accrue interest at the same rate and on the same basis (i.e., on the average daily balance), and such interest shall be payable on the same terms, as those specified in sub-paragraph (c)(ii) above.

(m) Debtor agrees to pay the principal and interest of the Refinance Account in monthly installments in an amount which shall be the greater of..."

Without regard to any restriction or penalty established by law, any natural or juridic person borrowing the sum of $1,500.00 or more in a single transaction for any industrial or commercial factors' lien contracts in accordance to this chapter, shall have power to make contract, incur obligations and borrow money, either in this Commonwealth or elsewhere, at such rates of discount for services considered acceptable and no such debtor of this type shall plead any statute against usury in any proceedings or legal action instituted to enforce the payment or to enforce compliance of any obligation arising out of any such borrowing, whether or not such obligation is evidenced by any bond, note, contract or other writing issued, assumed or guaranteed by such a debtor, successor or any assignee thereof, *where the rate of interest charged is one permitted by law. Therefore, no action shall lie for the recovery on the ground of usury of any discount deducted for services rendered in respect of any portion of a loan made for any industrial or commercial use in the sum of $1,500.00 or more in a single transaction nor to lay any criminal, civil or any other penalty.*" (Emphasis supplied.) [2]

The aforecited provision was amply debated in the Senate during February 1954, as Section 9 of Senate bill 205, in an apparent effort to distinguish the term "interests" from "discounts".

The original bill prior to amendment on the Senate floor, precluded the defense of usury as to both interests and discounts charged in a factor's lien.[3] However, it was amended to circumscribe the interests to those provided by law and the discount to whatever was acceptable in conformity with the services rendered.

Senator Colón, as the primary sponsor of the amendments made certain distinctions during debate as follows:

"... because in the kinds of transactions permitted by this law, an interest is charged for the loan and a certain discount is also made for the work performed by the factor or the corporation dedicated to that business, of investigation in relation to the debtors of the person who transfers the account or sells the prime material ..." (Translation ours) at 4 Diario de Sesiones de la Asamblea Legislativa, Tomo I, pág. 253 (1954)

"... the interest is not the discount for services ... The discount for services are the costs incurred by the industrial, the factor, in order to investigate the whole transaction. The type of interest is what is charged for the loan of money for a definite period of time and has nothing to do with the services, or the discounts for services." *Id.* at page 454.

Furthermore, the reach of these amendments was explained by two senators during the debate as follows:

---

**2.** The Supreme Court of Puerto Rico in *Mill Factors Corp. v. Registrar*, 97 PRR 369 (1969), stated as dictum, that the provisions of Section 559 of Title 10 of the Laws of Puerto Rico Annotated constitute an exception to the so-called Usury Act (31 LPRA § 4591). Clearly, said section refers to rates of discounts which shall not be considered usurious notwithstanding the Usury Act, provided that the interest charged is one permitted by law. However, the present case involves a rate of interest which is clearly in excess of the one permitted by law.

**3.** Section 9—Interests and Discounts shall not be Considered Usurious.—Without regard to any restriction or penalty established by law, any natural or juridic person borrowing the sum of $1,500 or more in a single transaction for any industrial or commercial use shall have power to make contracts, incur obliga-

tions and borrow money, either in this Commonwealth or elsewhere, at such rates of interests or discounts considered acceptable and no such debtor of this type shall plead any statute against usury in any proceeding or legal action instituted to enforce the payment or to enforce compliance of any obligation arising out of such borrowing, whether or not such obligation is evidenced by any bond, note, contract or other writing issued, as assumed or guaranteed by such a debtor, successor or any assignee thereof. Therefore, no action shall lie for the recovery on the ground of usury of any interest paid or discount deducted in respect of any portion of a loan made for any industrial or commercial use in the sum of $1,500 or more in a single transaction nor to lay any criminal, civil or any other penalty.

Mr. Concepción de Gracia: "... but that person will not be able to invoke any statute against usury in any legal proceeding filed with the purpose of collecting or seeking the compliance of any obligation resulting from the loan." *Id.* at page 456

Mr. Gutierrez Franqui: "As long as the interest charged as such is the one provided by law. That is, you cannot add the interests to the discounts for services to then say that these are usurious. They are to be separate as two distinct charges, and if the interest is legal, then there is no usury, even if the discount for services be what it may." *Id.*, at page 456.

Mr. Concepción de Gracia: "... that person who enters into a contract with a factor in accordance with the law he cannot invoke in any proceeding filed to collect monies or enforce compliance with a loan, invoke any statute against usury, according to the statute." *Id.*, at page 456.

Mr. Gutierrez Franqui: "As long as the interest charged is the legal one. If the interest charged is greater than the legal one, he can invoke it." *Id.* page 456.

In light of the foregoing, we find that the exclusion in section 559 of the defense of usury on the part of a debtor under a factors' lien contract refers to discounts for services and not to interests. That is, this section exempts from the defense of usury the discounts for services rendered in respect to any portion of a loan involving a factors' lien contract, provided that the rate of interest charged in said loan is one permitted by law.

█ Thus, if the interest charged exceeds the maximum interest rate provided by law, the defense of usury can be raised.

In order to determine the maximum interest rates that can be charged, we must refer to Law Number 1 of October 15, 1973 which is codified in 10 LPRA Sections 998–998k, since the Factors' Lien Act contains no provision to this effect.

Act Number 1 of October 15, 1973 (10 LPRA 998) provides for maximum annual interest rates of 9% on a transaction up to $3,000 and 8% over that amount. Similar provisions are also found in Article 1649 of the Civil Code of Puerto Rico (31 LPRA 4591).

Additionally, Section 2 of Law Number 1 of October 15, 1973, 10 LPRA Section 998a created a Board to regulate interest rates and charges consistent with the needs of the economy. Pursuant to this grant of authority, the Board adopted Regulations No. 15 and 16 on October 6 and November 16, 1978, respectively. (Exhibits A & B of debtors' motion of June 1, 1979).

Since Regulation No. 15 became effective on October 6, 1978, it was in full force at the time of the execution of the stipulation and agreement by the parties herein, i.e., on October 26, 1978, as well as at the time of the approval of the same by the bankruptcy court on November 14, 1978.

Thus, we find that paragraph 7 of Regulation No. 15 governs the interest rates or charges that can be collected in the commercial transaction entered into by the parties herein as evidenced by the stipulation and agreement which incorporates the factors' lien contract.

█ Specifically, paragraph 7 of Regulation No. 15 provides for a maximum interest rate of 9¼ *per annum*. Notwithstanding, the October 26, 1978 agreement and stipulation provided for a fluctuating interest charge of 4% over the prime interest rate charged by Citibank, N.A. at its New York Office which is clearly excessive, and as such, contrary to law.

For such a violation, 10 LPRA Section 998j prescribes certain criminal penalties. However, Section 998j specifically states that the provisions of Chapter 49C of the Code of Commerce, covering Law Number 1 of October 15, 1973, "in no way affect, modify or alter the civil liability that any natural or artificial person may incur under the section of the Civil Code of Puerto Rico that deals with the fixing of legal interest and the manner of recovering the excess amounts paid thereon ..."

In this respect, the Civil Code of Puerto Rico, 31 LPRA at Section 4594 provides in its pertinent part that a contract in which it is reserved, accepted or secured a rate of interest higher than that provided by said chapter, can be made effective in a Court of Puerto Rico only as to the principal owed and the court must, also, decree in the judgment that the debtor must pay the creditor 75% of the principal and the remaining 25% to the Commonwealth of Puerto Rico.

Finally, we conclude that the finding that a valid factor's lien contract exists in the present case is entitled to affirmance. However, the conclusion that the Usury Act does not apply to a lien executed under the Factor's Lien Act should be reversed.

WHEREFORE, in view of the foregoing, this case is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

The Clerk shall enter judgment accordingly.

SO ORDERED.