In re CÁCERES JOHNSON P.R., INC., Debtor.

Antonio O'NEILL, Trustee, Plaintiff,

v.

NATIONAL CUP COMPANY, Defendant.

Civ. No. 87–1605(RLA).
Bankruptcy No. 81–00735(SEK).
Adv. No. 82–0708.

United States District Court,
D. Puerto Rico.

Oct. 13, 1988.

Ismael H. Herrero, San Juan, Puerto Rico, for plaintiff.

Antonio González Geigel, Hato Rey, Puerto Rico, I. Barry Guerke, Dover, Del., for defendant.

## OPINION AND ORDER

ACOSTA, District Judge.

Trustee Antonio O'Neill ("Trustee"), plaintiff-appellant, has requested our review of an order of the Bankruptcy Court finding a payment made by Cáceres Johnson Puerto Rico, Inc. ("Cáceres"), debtor, to National Cup Company ("National Cup"), defendant-appellee, not avoidable as a preferential transfer under 11 U.S.C. § 547(b), and finding another such payment not avoidable as a post-petition debt under 11 U.S.C. § 549(a)(1).

### PROCEDURAL BACKGROUND

The debtor in this case filed a petition for relief under Chapter 11 of Title 11 U.S.C. on October 13, 1981. On January 25, 1982, the case was converted to a Chapter 7 petition, and the plaintiff-appellant was appointed as trustee of the debtor. On October 27, 1982, the Trustee filed an adversary proceeding under 11 U.S.C. § 547, and on June 7, 1983, amended his complaint pursuant to Bankruptcy Rule 701(1) and 11 U.S.C. § 549(a).

The amended complaint first alleged that the elements of a preference were present. In relevant part, it stated that the debtor transferred a portion of its property to (i.e. paid) the defendant-appellee within 90 days before the date of the filing of the Chapter

11 petition for debts incurred more than 45 days prior to the date of transfer (payment), and that, therefore, the transfer was not protected by 11 U.S.C. § 547(c)(2)(B).[1] Secondly, the amended complaint alleged that the debtor made a post-petition transfer to the defendant for a pre-petition (antecedent) debt. This, the amended complaint contended, constituted an avoidable payment under 11 U.S.C. § 549(a).[2]

### THE FACTS

This appeal arises from two similar transactions between the debtor, Cáceres, and National Cup, defendant-appellee. In the first transaction, Cáceres ordered merchandise (paper cups) from National Cup on June 4, 1981. National Cup shipped the merchandise from Baltimore, Maryland, on June 22, 1981, which the debtor received in San Juan, Puerto Rico, on July 6, 1981. At that time, Cáceres paid only the shipping costs. On August 13, 1981 it paid National Cup's agent $14,472.17 for this shipment.

The second transaction began the following month when, on September 28, 1981, the debtor ordered similar goods. This order was shipped on October 5, 1981, but Cáceres did not receive the goods until October 14, 1981, a day after it filed for bankruptcy under Chapter 11. Later, between November 9, 1981 and December 1, 1981, the debtor issued four checks totalling $15,667.56 to pay for the second shipment.

### ISSUE

The issue in these proceedings is *when* the debts in each of the above transactions between the debtor and the defendant-ap-

pellee were "incurred" for purposes of both sections 547(c)(2) and 549(a) of the Bankruptcy Code. If the debts were incurred when the goods were shipped, then Cáceres' payments to National Cup constitute preferential transfers that the Trustee may avoid. If, however, they were incurred when the goods were received, then the payments are not avoidable.

### ARGUMENTS

The Bankruptcy Court found that the debts were incurred when the debtor received the merchandise from the defendant-appellee. In this case, the first shipment was received on July 6, 1981, and the second on October 14, 1981. The Court followed the reasoning of a related case, *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35 (1st Cir.1984), which strongly implied that the debt between the debtor there (also Cáceres) and another seller of goods was incurred when Cáceres received the merchandise. Thus, it found that the trustee (also Antonio O'Neill) could not avoid the debtor's payment to Cáceres as a preferential transfer.

In this proceeding, the Trustee bears the burden of proving that the Bankruptcy Court "erred in its factual appreciation." *Betancourt v. Garcia*, 49 B.R. 620, 621 (Bankr.D.P.R.1985). We, therefore, will not upset the Court's findings unless they are clearly erroneous or unless they present the "most cogent evidence of mistake or miscarriage of justice." *In re Pietri*, 22 B.R. 462, 464 (Bankr.D.P.R.1982).

The Trustee bases his appeal on a series of cases holding that, as between a seller of goods (creditor) and a debtor, a debt is

1. The provisions of 11 U.S.C. § 547 in effect at the time of the transactions at issue provided as follows:

   § 547. Preferences

   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

   . . . . .

   (4) made—

   (A) on or within 90 days before the date of the filing of the petition;

   . . . .

   (c) The trustee may not avoid under this section a transfer—

(2) to the extent that such a transfer was—

. . . . .

(B) made not later than 45 days after such debt was incurred;

. . . .

2. The relevant portions of 11 U.S.C. § 549(a) provide:

   § 549. Postpetition transactions.

   (a) ... /T/he trustee may avoid a transfer of property—

   (1) that occurs after the commencement of the case;

   . . . .

incurred when the former ships goods to the latter. (*See* Brief on Appeal p. 7.) On a deeper level, and in accordance with the bankruptcy law principles applied in his cited cases, the Trustee asserts that Cáceres' "property interest" arose at shipment. (*See id.*) The Trustee consequently argues that neither section 547(c)(2)(B)'s 45–day exception nor section 549(a)(1)'s authorized-payments provision protect Cáceres' two payments to National Cup. So, he claims that Cáceres' payments are avoidable. (*See id.* at pp. 10–11.)

For its part, National Cup urges this Court to affirm the Bankruptcy Court's order. It contends that, for bankruptcy preference purposes, the controlling bankruptcy law principle is that a debt is incurred when a debtor becomes obligated to pay. (*See* Answering Brief p. 10.) It argues, therefore, that the debts in the instant case were incurred when Cáceres received, i.e. accepted, the goods from National Cup, *see* Answering Brief p. 15. It also argues that both section 547(c)(2)(B) and section 549(a)(1) protect the payments it received from Cáceres, *see* Answering Brief pp. 23–24.

■ The determination of precisely when a debt is incurred in a sales transaction between a purchasing debtor and a selling creditor has been the subject of ample bankruptcy case law. But wisely and prudently, courts have tailored this determination into an "either/or" test[3] dependent on the specific facts of each case.

As a doctrinal matter,

/m/ost courts ... have held that a debt is incurred for purposes of § 547(c)(2) when the debtor *becomes legally obligated to pay.* (Emphasis added.)

*In re Demetralis,* 57 B.R. 278, 283 (Bankr. N.D.Ill.1986). A number of prominent bankruptcy cases have held similarly, *see*

*In re Amarex, Inc.,* 74 B.R. 378, 383 (Bankr.W.D.Okla.1987); *In re White River Corp.,* 799 F.2d 631, 633 (10th Cir.1986); *In re Advance Glove Mfg. Co.,* 761 F.2d 249, 251–252 (6th Cir.1985); *In re Gold Coast Seed Co.,* 751 F.2d 1118, 1119 (9th Cir. 1985); *In re Emerald Oil Co.,* 695 F.2d 833, 837 (5th Cir.1983); *In re Iowa Premium Serv. Co.,* 695 F.2d 1109, 1111 (8th Cir.1982); *and Barash v. Public Fin. Corp.,* 658 F.2d 504, 511 (7th Cir.1981). Noted bankruptcy commentators have corroborated this as well. *See* Levin, *An Introduction to the Trustee's Avoiding Powers,* 53 Am.Bankr.L.J. 173, 186–187 (1979), and Herbert, *The Trustee Versus The Trade Creditor: A Critique of Section 547(c)(1), (2) & (4) of the Bankruptcy Code,* 17 U.Rich.L.Rev. 667, 687–88 (1983). Though the First Circuit has not established this rule conclusively, we follow its guidance in *O'Neill v. Nestle Libbys,* and find that the above cited cases set forth the controlling law in this case.

On a practical level, "generally debts are incurred when goods are delivered or services are performed." *In re H & A Constr. Co., Inc.,* 65 B.R. 213, 218 (Bankr. D.Mass.1986). *See also In re Georgia Steel, Inc.,* 58 B.R. 153, 158 (Bankr.M.D. Ga.1984) and *In re Art Shirt Ltd., Inc.,* 68 B.R. 316, 324 (Bankr.E.D.Pa.1986). This means, more specifically, that the "legal obligation to pay arises *either* on shipment *or* delivery, depending on the contractual agreement." *In re Demetralis,* 57 B.R. at 284 (emphasis added). *See also In re Richter & Phillips Jewelers & Distributors, Inc.,* 31 B.R. 512, 515 (Bankr.S.D.Ohio 1983); *In re Almarc Mfg., Inc.,* 52 B.R. 582, 585 (Bankr.N.D.Ill.1985) and *In re Production Steel, Inc.,* 54 B.R. 417, 421 (Bankr.M.D.Tenn.1985).[4]

■ In this case, the record on appeal is void of an express contractual agreement

---

**3.** *See infra* 202.

**4.** At this point, we are compelled to note several serious deficiencies in the Trustee's Brief. First, his Brief has failed to comply with the provisions of Bankruptcy Rule 8010(a) and (b), among others. As a result, it is incomplete. Secondly, the Brief's "Argument" section is, in very substantial parts, a literal transcript of the

arguments put before this Court in the brief of another case. Third, the "Argument" section also omits an entire line of reported decisions that are relevant to the instant appeal. We believe that counsel for the Trustee has not met his duties to this Court. But we, of course, have not allowed this to prejudice his client.

governing the transactions between Cáceres and National Cup. Thus, we look to their acts, their conduct and the prevailing factual circumstances to determine when they intended that Cáceres would become legally obligated to pay. *See In re Coral Petroleum, Inc.*, 60 B.R. 377, 388 (Bankr.S.D.Tex.1986).

The bills of lading for both shipments, which are included in the record on appeal, *see* Answering Brief Addendum, Exhibits I and J, indicate that the merchandise was sent "collect," meaning that the "shipments /would/ not be released until payment ha/d/ been received ... at /the/ port of destination." Answering Brief Addendum, Exhibit J. Moreover, on the bills of lading, Cáceres certified that it "received the described goods ... in apparent good order and condition." *Id.* It is uncontroverted that, for both shipments, Cáceres received, inspected, and paid the shipment costs for the goods at the port of San Juan, taking them then, but using and paying National Cup for them later. "Usually a buyer is obligated to pay for goods at the contract price only after acceptance (footnote to U.C.C. §§ 2–607(1), 2–709) which usually follows inspection. (footnote omitted)" Herbert, 17 U.Rich.L.Rev. at 687. In this case, acceptance occurred when Cáceres received the goods. Neither Cáceres, the Trustee nor anything in the record on appeal suggests that the transactions here were unusual; rather they were ordinary-course business dealings between Cáceres and National Cup. As such, we must infer that the manner in which Cáceres and National Cup engaged in these transactions minimized Cáceres risk of loss. *See* Herbert, *id.* In other words, we believe that Cáceres exercised its ordinary buyer's prerogatives to refuse—and not pay for—the goods until it found them to its liking and determined that they conformed to its specifications. Among his arguments on appeal, the Trustee does not contend that Cáceres became obligated to pay on any date prior to the date Cáceres received, i.e. accepted, the goods. Moreover, the record is bereft of any indication that either Cáceres or National Cup or both intended that Cáceres was to become obligated to pay at any time sooner in the transactions. There was no pre-payment here, neither express nor implied.[5]

The plaintiff-appellant has failed to show that the Bankruptcy Court's findings are clearly erroneous. The circumstances of this case reveal that the debts were incurred at the time the merchandise was received. For the first shipment, because payment was made on August 13, 1981, i.e. within 45 days after the goods were received on July 6 of that year, the Trustee may not avoid the payment as a preferential transfer under section 547(c)(2)(B) of the Bankruptcy Code. As for the second shipment, it was received the day after the debtor filed its own Chapter 11 petition; hence, because Cáceres' subsequent payment was for a post-petition debt, it is not avoidable by the Trustee under section 549(a)(1) of the Bankruptcy Code.

## CONCLUSION

Based on the foregoing, the Order issued by the Bankruptcy Court on September 3, 1987 is affirmed and the appeal filed by Antonio O'Neill is dismissed.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**5.** On appeal, the Trustee contends that the transactions involved here were conducted under "C.I.F." terms. We need not decide this question to settle the controlling issue in this case. As a factual matter, the Bankruptcy Court did not find that the shipments were C.I.F. Yet its finding that shipping costs were paid at the port of destination, the manner in which the merchandise was itemized on the bills of lading, the lack of proper C.I.F. marks on the bills, and other receipts included in the record on appeal all strongly refute his contentions.