MATHIAS B. BECKER & another *vs.* GEORGE D. DUTTON & others, executors.

Norfolk.    October 11, 1929. — November 27, 1929.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Trust*, What constitutes.

Certain instruments, executed by three persons who were the parties to litigation respecting alleged infringements of patents and in settlement of such controversies, contained assignments of certain patents to one of the parties, who assumed no obligation to use the patents himself, or to grant licenses to others to use them except to a corporation controlled by one of the parties, although he had a right to grant such licenses to others and to use a royalty fund thus arising to acquire other patents or licenses under patents in order to strengthen the patent situation to which the agreements related or to settle claims for infringement connected with said patent situation. The agreements gave no rights to the other two parties except a right to one of them to receive a sum of money for his patents, and to both of them to receive certain defined proportionate shares out of the royalty fund. The agreements provided that they should "be binding upon and shall enure to the benefit of the parties, their legal representatives and assigns." *Held*, that the agreements did not create a trust.

PETITION, filed in the Probate Court for the county of Norfolk on July 16, 1928, for the appointment of trustees under instruments, described in the opinion, alleged to constitute trusts.

The petition was heard by *McCoole*, J. Material facts found by him are stated in the opinion. A decree was entered that, it appearing "that under and by virtue of the terms of said instruments no trust was created and no vacancy exists in any office of trustee under said instru-

ments, it is decreed that said petition be and it hereby is
dismissed."

The petitioners appealed.

*R. B. Heavens,* for the petitioners.

*H. F. Lyman,* for the respondents.

PIERCE, J.    This case comes to this court on appeal
from a decree of the Probate Court of the county of Norfolk
dismissing a petition that a trustee be appointed in place
of Charles Sumner Bird, deceased.

The case was heard in the Probate Court upon the peti-
tion, the agreements therein referred to, and the state-
ments of facts in lieu of evidence.    The judge made a
voluntary report of material facts, in substance as follows:
This is a petition for the appointment of a trustee to fill
a vacancy alleged to exist under and by virtue of two certain
agreements, one between Charles S. Bird and Mathias B.
Becker, dated May 14, 1919, and the other between said
Charles S. Bird and Sol H. Goldberg, dated July 8, 1919.
Copies of said agreements were filed with the petition and
are made a part of the report.    Prior to May 14, 1919,
both Bird and Becker were interested in the manufacture
of so called design roofing, Bird principally through Bird
& Son, Inc., a corporation of which the principal plant
was located in East Walpole, Massachusetts, and Becker
through Elaborated Ready Roofing Company, a corpo-
ration located in Chicago, Illinois.    Design roofing con-
sists of roofing material, on the surface of which is pro-
duced a design approximating the appearance of shingles,
tiles or slate.    In 1919 both parties held patents relating
to such roofing.    Bird held the underlying patents and
Becker held certain subsidiary process or machine patents.
These patents are specifically enumerated in the agreement
between Bird and Becker dated May 14, 1919.    Prior to
the date of that agreement Bird had brought suit for in-
fringement against Becker in the United States courts, and
had been successful in the litigation; an injunction had
issued and an accounting was in progress.    Instead of
pursuing the accounting to a conclusion the parties com-
promised and entered into the agreement dated May 14,

1919. This is the instrument which it is argued created a trust. In the negotiations for this agreement Bird was represented by Philip R. Allen, who has now succeeded Bird as president of Bird & Son, Inc. and who is one of the parties herein, being an executor of Bird's will.

Annexed to this contract was a form of license agreement, referred to in clause two of the contract, to be executed by Bird and the Elaborated Ready Roofing Company. This license, among other things, contained provisions for maintenance of prices by the licensees according to a standard of price set by Bird. By the terms of the contract Becker agreed to convey forthwith to Bird all patents and patent rights now owned by him, and all other patents or applications for patents of the United States or Canada relating to design roofing products, machinery or apparatus now owned by Becker, together with all claims and rights of action for past infringement thereof. No question is raised in these proceedings but that the patents were transferred and administered substantially in conformity with the agreement dated May 14, 1919. Upon the execution and delivery of such assignment Bird was to execute a license agreement to the Elaborated Ready Roofing Company, enabling it to operate under all of the Bird and Becker patents.

Bird further agreed that "The royalties paid to said Bird by said Elaborated Ready Roofing Company under said license, and all royalties which may in future be received by said Bird for licenses for future use of said Bird and Becker patents, or any of them shall constitute a royalty fund to be disposed of as follows; Out of said royalty fund there shall first be paid any expenses involved in connection with the grant or enforcement of said licenses and any expenses of litigation on said patents or any of them; from said royalty fund there shall also be paid any sum or sums, whether they are of royalty payments or purchase price which Bird may pay to any other person or persons in order to acquire patents or licenses under patents in order to strengthen the patent situation to which this agreement relates or to settle claims for infringement con-

nected with said patent situation. If such patents are acquired and royalties collected thereunder such royalties shall be added to the royalty fund. Subject to said deductions said royalty fund shall be divided between said Bird and said Becker in the ratio of 66⅔% to Bird and 33⅓% to said Becker. Said Bird agrees to consult with said Becker prior to making agreements for royalty payments to others, purchase of other patents or licenses, or other steps taken pursuant to this clause."

It was further agreed that "Bird shall keep accurate records of all receipts and disbursements of said royalty fund, which records shall at all times be open to inspection by said Becker or his duly accredited representatives and quarterly statements thereof shall be rendered by said Bird, with payment of balances due on the tenth day of January, April, July and October of each year"; that a sum of money now due to Becker from certain licensees shall be paid over to Bird; that before any share in said royalty fund shall be payable to Becker, "the sum of $35,000 shall first be paid out of said fund to said Bird"; that Becker "will supply to Bird & Son, Inc., a machine of the kind now in use by said Becker for printing roofing, free of charge. Bird & Son, Inc., shall not be required to pay any royalties on account of the use of said patents or any of them unless said Bird & Son, Inc., shall use the machinery of said Becker," in which case Bird & Son, Inc. was to pay a certain defined royalty into the royalty fund; that "Any future inventions relating to design roofing processes and machines or products which may be made by said Becker or said Bird shall fall within the scope of this agreement, such inventions, if made by Becker to be assigned to said Bird, and all future patents or rights purchased from royalty funds from others or obtained by either of the parties, involving design roofing processes, machinery or products; and the expenses or patent applications on any such inventions to be paid out of the royalty fund. Any such invention made by either party shall be promptly communicated to the other party."

To support the contention that the agreement, when read in the light of the circumstances surrounding it, shows an

intent to create a relationship which is in fact a trust relationship, reliance is placed upon the fact that Bird was authorized by clause three of the agreement to withdraw from the royalty fund therein provided for any expenses in connection with the grant or enforcement of licenses, any expenses of litigation on the patents or any of them, any expenses, whether royalty payments or purchase price, which Bird may pay in order to acquire patents or licenses to strengthen the patent situation to which the agreement relates, and sums paid to settle claims for infringement.

The contract between Bird and Sol H. Goldberg grew out of a claim by Goldberg that Bird, and the Elaborated Ready Roofing Company and other manufacturers licensed under the Bird patents, infringed the patents of Goldberg. This controversy was settled by assignment of the Goldberg patents to Bird, and an agreement that Goldberg was to participate in the royalties as they should be collected under the Bird-Becker agreement. The Bird-Goldberg contract, executed July 8, 1919, is similar to the Bird-Becker agreement in every fundamental aspect, and throws no additional light upon the question whether the contract of May 14, 1919, created, as between the parties to both contracts, or as between the parties to either contract, a trust relationship. In passing, it is to be noted that the agreements of May 14 and of July 8, 1919, expressly provided that "This agreement shall be binding upon and shall enure to the benefit of the parties, their legal representatives and assigns."

Whether a trust is created by a contract is to be ascertained by the words used in that contract or by the terms of that contract, however phrased, which show in the light of the surrounding circumstances that the parties intended by the executed instrument to create an express trust in furtherance of the object sought to be attained. *Sawyer* v. *Cook*, 188 Mass. 163. We think it clear that the agreements, read in the light of the object sought to be accomplished, sound in contract, and are not consistent with an intention of the parties that the patents held by Bird after the assignment of them to him were to be held by him charged with a

trust.   Under these agreements Bird assumed no obligation
to use the patents himself or to grant licenses to others to
use them, except to the Becker company.   Beyond the right
of Goldberg to receive a sum of money from Bird & Son, Inc.
for past use of the Goldberg patents, neither Becker nor
Goldberg had any rights as against Bird other than to re-
ceive certain defined proportionate shares out of the royalty
fund.   A very careful study leads to the conclusion that
neither contract charged the patents with a trust in the
hands of Bird or in the hands of others taking title to the
patents with knowledge of the terms of the agreements.   It
follows that the decree of the Probate Court must be
affirmed.

*Ordered accordingly.*