**In re MINDY'S, INC., Debtor.**

**Daniel F. CARMACK, Trustee, Plaintiff,**

**v.**

**Samuel ZELL, Trustee, et al., Defendants.**

**Bankruptcy No. 2–80–01385. Adv. No. 2–81–0308.**

United States Bankruptcy Court, S. D. Ohio, E. D.

Jan. 11, 1982.

Daniel F. Carmack, Columbus, Ohio, for plaintiff.

Lee C. Mittman, Columbus, Ohio, for debtor.

Thomas J. Bonasera, Columbus, Ohio, Albert E. Fowerbaugh, Cleveland, Ohio, for defendants.

## OPINION AND ORDER ON COMPLAINT TO RECOVER PREFERENCE

R. J. SIDMAN, Bankruptcy Judge.

Daniel F. Carmack (hereinafter "Trustee"), trustee in bankruptcy for the estate of Mindy's, Inc., has filed this action under the provisions of § 547 of the Bankruptcy Code (11 U.S.C. § 547), alleging that certain pre-petition payments received from the debtor by the defendants, Samuel Zell, Trustee ("Zell") and Equity Financial and Management Company ("Equity"), were preferential and thus recoverable by a trustee in bankruptcy. The Court makes the following findings.

Mindy's, Inc. was a clothing retailer operating at several locations. In each location relevant to this matter, Mindy's was a lessee on a long-term lease obligation originally incurred in 1976. The locations in question were retail outlets located at the Mentor Mall (Mentor, Ohio), the Westerville Mall (Westerville, Ohio), and the Canton-Gold Circle Mall (Canton, Ohio). Mindy's transferred money to the defendants, Zell and Equity, within ninety (90) days of the April 25, 1980, filing of an involuntary petition against Mindy's under Chapter 7 of Title 11 of the United States Code, in the following amounts and with other relevant facts noted:

|  | Amount of Check | Date of Check | Date Check Paid | Rent For Month Of | Date Obligation First Accrued Under Lease | Date Sales Statement Due |
|---|---|---|---|---|---|---|
| Ex. # 1 | $ 755.96 | 2–5–80 | 2–25–80 | Jan. | 1–1–80 | 2–10–80 |
| Ex. # 2 | 1,518.10 | 1–7–80 | 2–1–80 | Dec. | 12–1–79 | 1–10–80 |
| Ex. # 3 | 1,469.41 | 2–5–80 | 2–20–80 | Jan. | 1–1–80 | 2–10–80 |
| Ex. # 4 | 1,469.41 | 3–18–80 | 3–25–80 | Feb. | 2–1–80 | 3–10–80 |
| Ex. # 5 | 992.82 | 2–5–80 | 2–20–80 | Feb. | 2–1–80 | 3–10–80 |

There is no dispute in the present case that four of the five elements of a preferential transfer exist. The defendants admit that there was a transfer of debtor funds within ninety (90) days of the petition in bankruptcy to or for their benefit, while the debtor was insolvent, which has enabled the defendants to obtain a greater percentage of their obligation than they would have received had the payments not been made and this case liquidated under the provisions of Chapter 7 of the Bankruptcy Code. The disputed issue is whether or not the payments made by the debtor were on an antecedent debt and whether the 45 day "ordinary course of business" exception should apply to bar the trustee's recovery.

The trustee argues that the lease obligations, which were originally incurred in 1976 when the leases were signed, create an antecedent debt from that time forward, and any subsequent payments made on the leases were payments on an antecedent debt. The defendants, however, argue that the rent obligation matures only on a monthly basis during the course of the leases, and thus payments on current monthly rent are not on account of antecedent debt, but rather are payments on current debts for contemporaneous consideration, namely, the continuation of the leasehold estate. The defendants further argue that the exception to the preference recovery statute contained in § 547(c)(2) applies in that the payments made by Mindy's to them were made in the ordinary course of business within forty-five (45) days after such debts were incurred and were made in accordance with ordinary business terms.

There was some disagreement as to whether or not the dates on the various checks would be deemed the date of transfer of the funds, or whether or not the date upon which such checks were paid by the debtor's bank would be deemed the time of

transfer. The Court hereby finds that under the provisions of § 547(e)(1)(B) of the Bankruptcy Code, the time of transfer is deemed to be the time of the payment of the check, and thus, for purposes of this case, the date the check was paid will be deemed to be the date upon which a transfer of the debtor's property was made.

■ The Court declines to follow the rationale advanced by the trustee that the debt was incurred at the time of the original signing of the lease obligations. The total lease obligation, at that point in time, was not due and payable—it was only due and payable as the lease term progressed and as the lessee occupied the premises subject to the leasehold in accordance with the terms of the lease. Contrary to the suggestion of the trustee, this situation is not analogous to payments on a long-term unsecured note obligation. An unexpired lease on real estate is treated as an executory contract under the Bankruptcy Code (11 U.S.C. § 365), a recognition of the principle that such lease involves an exchange of rights and obligations by the parties to the lease throughout its term. The concept of adequate assurance of future performance under a lease is separately provided for in the Bankruptcy Code because, unlike the payee on a long-term note obligation who merely accepts periodic payments from a payor, a lessor (or lessee in rarer circumstances) continues to supply to a lessee performance under the lease and, as rent is paid, continues to provide to the lessee the benefit of an on-going leasehold estate.

Historically, the payment of current rent has been held to rest upon current consideration and thus did not constitute a preference under previous bankruptcy law. See *In re Barrett*, 6 Am.Bank.Rep. 199 (S.D.N.Y.1901); *In re Lange*, 3 Am.Bank.Rep. 231, 97 F. 196 (S.D.N.Y.1899); *Matter of Louis J. Bergdoll·Motor Co.*, 35 Am.Bank.Rep. 32, 225 F. 87 (E.D.Pa.1915); and *In re Bowles*, 14 Am.Bank.Rep. (N.S.) 133 (E.D.Neb.1928). While there has been some suggestion that current Bankruptcy Code provisions may in some manner alter the result reached in these cases [See Kaye, *Preferences Under the New Bankruptcy Code*, 54 Am.Bank. L.J. 197 at 204 n.11 (Summer, 1980)], this Court concludes that the present Bankruptcy Code neither mandates nor sanctions such a result. See 4 *Collier on Bankruptcy* (15 Ed.) ¶ 547.20 n.20.

■ As can be seen from a review of the salient facts concerning each of the payments made by the debtor as summarized in the chart above, all of the payments appear to have been made more than forty-five (45) days after the obligation first began to accrue. For instance, payment (see Ex. # 1) for the rental obligation on the Mentor Mall for the month of January, 1980, became due, by terms of the lease, no later than January 1, 1980. However, as best this Court is able to discern the terms of payment for the various leases involved, the leases provided that the rent due for a month would be a percentage of gross sales (usually 6%), with a minimum rent payable regardless of the amount of sales. This method of calculating the rental obligation necessarily required the lessee to close its sales books each month, report its gross sales figure, and then tender the appropriate rental payment for the month just concluded. Thus, while the January rent was due on January 1, calculation of the actual amount due could not be made until after January 31. The leases, in fact, provided that the lessee would, 10 days after the end of the month, provide the lessor with the previous month's sales figures and tender the appropriate check. Exhibit # 1, the check for payment of January rent on the Mentor Mall, was thus drawn on February 5, 1980, shortly after the January sales figures would have been available. All this is to say that the 5 payments made by the debtor which are the subject of this preference action were substantially contemporaneous to the time when such payment could be calculated. They were not, as one might conclude from a review of the lease document itself, more than thirty (30) days overdue when the checks were drawn. It was clearly in accord with the standard business practices of both the lessee and lessor on these various store locations to tender and accept such lease payments as if they were

timely made. Such practice, under the factual pattern presented to the Court, does not comport to the traditional reach of the trustee's avoiding powers as codified now in § 547 of the Bankruptcy Code. As can be seen from a review of the five payments made in this case, no check was paid more than 45 days subsequent to the date upon which the actual rental obligation for the prior month could be calculated and thus due under the terms of the various leases. Such a factual finding could also bring the rental payments under scrutiny under the protection of § 547(c)(1) of the Bankruptcy Code, the "contemporaneous exchange" exception to preference recovery.

The present situation is not one where a rental obligation has been permitted to accrue over a period of months and where a lump sum payment may have been made shortly before the filing of a bankruptcy petition. In such an instance it would appear that the exception contained in § 547(c)(2) would not apply, and the application of such payment to substantially overdue rental obligations would constitute a preference, assuming all other elements of preference would exist. However, because of the forty-five (45) day "ordinary course of business" exception to preference recovery contained in § 547(c)(2) of the Bankruptcy Code, and the apparently undisputed fact that the rent obligations were incurred and that the rent payments were made by the debtor in the ordinary course of its and the lessor's businesses, and according to ordinary business terms as they existed between the lessor and lessee, the trustee's recovery of these payments must be denied.

Based upon the foregoing, the Court hereby determines that the relief requested in the complaint filed by the trustee is without merit and such relief is hereby denied. A judgment will be entered in accordance with these findings.

IT IS SO ORDERED.