In the Matter of GEORGIA STEEL, INC., d/b/a Eastern Crane & Equipment, d/b/a Plate Services, d/b/a Georgia Structurals, and d/b/a Quickwork, Debtor.

J. Coleman TIDWELL, Trustee, Plaintiff,

v.

FICKLING & WALKER INSURANCE AGENCY, INC., Defendant.

Bankruptcy No. 81–50966–Mac.
Adv. No. 82–5424.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

June 4, 1984.

See also, 56 B.R. 509.

Duncan A. Roush, Kilpatrick & Cody, Atlanta, Ga., for plaintiff.

Walter H. Bush, Jr., Hall, Bloch, Garland & Meyer, Macon, Ga., for defendant.

## MEMORANDUM OPINION ON COMPLAINT TO AVOID PREFERENTIAL TRANSFERS

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

On September 3, 1981, Georgia Steel, Inc., d/b/a Eastern Crane & Equipment, d/b/a Plate Services, d/b/a Georgia Structurals, and d/b/a Quickwork, Debtor, filed with this Court its petition under Chapter 11 of the United States Bankruptcy Code. On October 29, 1982, Debtor's Chapter 11 case was converted by the Court to Chapter 7 of the United States Bankruptcy Code, and J. Coleman Tidwell was appointed trustee (hereinafter Trustee).

Before the Court is the "Complaint to Avoid Preferential Transfers" filed by the Trustee on December 22, 1982. The complaint alleges that Defendant Fickling & Walker Insurance Agency, Inc.[1] received preferential transfers in the amount of $17,224.00, which transfers are avoidable by the Trustee under the provisions of 11 U.S.C.A. § 547 (West 1979). The complaint came on for trial on February 15, 1984, and the Court having considered the evidence presented at trial and the arguments and briefs of counsel, now publishes its findings of fact and conclusions of law.

### FINDINGS OF FACT

On February 1, 1980, Debtor obtained through Fickling & Walker a composite insurance policy from the United States Fidelity and Guaranty Company. The inception date of the policy was February 1, 1980, and the expiration date was January 1, 1981. Under the terms of the policy, Debtor was required to pay an "advance premium." At the end of the policy period, an "earned premium" was to be calculated based on an audit of Debtor's sales. Debtor was entitled to a refund if the advance premium exceeded the earned premium, but was billed for the difference if the earned premium exceeded the advance premium.[2] On March 17, 1980, Debtor was

---

1. Fickling & Walker Insurance Agency, Inc. has changed its name to Fickling & Walker Insurance Services, Inc.

2. The terms of the policy provided:
   1. *Premium* All premiums for this policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium [sic] shall be computed for such period and, upon notice thereof to the *Named Insured,* shall become due and payable. If the total earned premi-

billed $50,465.00 for the advance premium, which was subsequently paid by Debtor.

At the end of the policy period, an audit was conducted, and the earned premium was found to exceed the advance premium by $21,235.00. On March 30, 1981, Debtor was sent a bill for the $21,235.00. Debtor contested the accuracy of the audit, and a second audit was performed. The second audit revealed that the earned premium exceeded the advance premium by $17,-224.00. On June 22, 1981, Debtor was billed for the $17,224.00.

On July 14, 1981, Debtor drew a check made payable to Fickling & Walker in the amount of $9,000.00. This check represented partial payment on the June 22, 1981, bill. The check was paid by Debtor's bank on either July 15, 1981, or July 16, 1981. On July 31, 1981, Debtor drew a second check made payable to Fickling & Walker, representing the balance on the June 22, 1981, bill. The second check was in the amount of $8,224.00, and it was paid by Debtor's bank on August 14, 1981, or August 18, 1981. It is the total of these two checks, $17,224.00, that the Trustee seeks to recover as preferential.

## CONCLUSIONS OF LAW

The Trustee bases his complaint on 11 U.S.C.A. § 547(b) (West 1979), which provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owned by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The parties stipulate that subsections (b)(1) and (b)(4) are satisfied in this adversary proceeding. Fickling & Walker denies that the remaining elements of a preferential transfer are satisfied.

Fickling & Walker denies that the transfers were made on account of an antecedent debt. As will be discussed later in this opinion, the Court concludes that Debtor's debt to Fickling & Walker was owed by Debtor on January 1, 1981, the end of the policy period. Because payment was made more than five months after that

um for the policy period is less than the premium previously paid, the Company shall return to the *Named Insured* the unearned portion paid by the *Named Insured.*

The *Named Insured* shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

2. *Inspection and Audit* The Company shall be permitted but not obligated to inspect the *Named Insured's* property and operations at any time. Neither the Company's right to

make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the *Named Insured* or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The Company may examine and audit the *Named Insured's* books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

date, the Court concludes that the payments were made on account of an antecedent debt.

Fickling & Walker contends that Debtor was not insolvent[3] at the time of the transfers. As evidence of Debtor's insolvency, the Trustee enjoys the statutory presumption of insolvency contained in section 547(f), which provides: "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C.A. § 547(f) (West 1979).

■ The effect of the statutory presumption of insolvency is set forth in Fed. R.Evid. 301, which provides:

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Because the Trustee has the burden of establishing the elements of a preferential transfer in section 547(b),[4] the effect of the statutory presumption of insolvency is to impose on Fickling & Walker the burden of going forward with evidence of solvency, but the ultimate burden of persuasion remains with the Trustee. See In re Rustia, 20 B.R. 131, 9 Bankr.Ct. Dec. 6, 6 Collier Bankr.Cas.2d 917 (Bankr.S.D.N.Y.1982); 4 Collier on Bankruptcy ¶ 547.03[5] (15th ed. 1984).

■ As evidence of solvency, Fickling & Walker notes that Debtor's bankruptcy schedules, executed on October 19, 1981, show Debtor's assets of $5,750,085.00 to exceed its liabilities by $191,869.79. Mr. Burke L. Slocumb, Jr., the former president of Debtor, testified at trial that at the time he executed the schedules, he thought that the schedules accurately reflected Debtor's assets and liabilities. He further testified that the assets and liabilities of Debtor would not have changed between the alleged preferential transfers to Fickling & Walker and the filing of the schedules. However, Mr. Slocumb also testified at trial that the assets on Debtor's schedules were overvalued by $400,000.00. He noted that the schedules listed a $100,000.00 leasehold interest, although the lease had expired as of the date of the schedules. Also, accounts receivable of $1,132,334.87 were valued at 100% of their face value, although Debtor had a collection rate of only seventy-five percent. Also, Debtor's inventory was valued at cost and certain real property was overvalued by some $60,000.00.[5]

In Mazer v. Aetna Finance Co. (In re Zuni), 6 B.R. 449, 6 Bankr.Ct. Dec. 1222 (Bankr.D.N.M.1980), a preference case, the debtors scheduled assets of $60,679.00 and liabilities of $36,948.14. On the question of insolvency, the court held that the trustee established that the debtor's assets were valued at only $18,000.00 at the time of the bankruptcy filing, and that the trustee therefore had carried his burden of proof on the insolvency issue.

In this adversary proceeding, the Court is persuaded by the testimony of Mr. Slocumb that Debtor's original schedules were not accurate, and that Debtor's liabilities actually exceeded its assets at the time of the filing of the schedules. Since Mr. Slocumb testified that the financial condition of Debtor was unchanged between the transfers to Fickling & Walker and the

---

**3.** Insolvent is defined in 11 U.S.C.A. § 101(26) (West 1979). Generally, a debtor is insolvent when his liabilities exceed the fair market value of his assets. *Tidwell v. Merchants & Farmers Bank (In re Dempster)*, 59 B.R. 453, (Bankr. M.D.Ga.1984).

**4.** *See, e.g., Meyers v. Vt. Nat'l Bank (In re The Music House, Inc.)*, 11 B.R. 139, 7 Bankr.Ct.Dec.

882, 5 Collier Bankr.Cas.2d 1240 (Bankr.D.Vt. 1980).

**5.** On January 31, 1983, Debtor amended its schedules to show debts of $5,840,706.27 and assets of $2,654,155.13.

filing of the schedules, the Court concludes that the Trustee has carried his burden on the insolvency issue.

■ Section 547(b)(5) is the greater percentage test. Fickling & Walker denies that the transfers enabled it to receive more than it would receive if the transfers had not been made and it received a distribution in this Chapter 7 case. This Court is of the opinion that when an unsecured creditor receives 100% payment on its debt prior to bankruptcy, and the ultimate distribution in the bankruptcy case is less than 100%, the greater percentage test is met. *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981); *Rovzar v. Chemical Sales & Service Co. (In re Saco Local Development Corp.)*, 30 B.R. 862 (Bankr.D. Me.1983). The Trustee testified that he has potential assets of $1,600,000.00 to pay claims of approximately $5,000,000.00, and that a 100% distribution therefore is not possible.

Fickling & Walker argues that the Trustee's testimony lacks credibility.[6] In particular, it argues that the Trustee assigned a value of $500,000.00 to an $8,000,000.00 claim that Debtor has pending in this Court against a third party. Fickling & Walker argues that if only $4,000,000.00 were collected on that claim, there would be a 100% distribution.

■ The Court has reviewed the Trustee's testimony and finds it to be credible. Although the Court does not attempt to prejudge the claim against the third party, the mere possibility of a large recovery on the claim is not sufficient to overcome the Trustee's testimony that a 100% distribution is not possible. Under Fickling & Walker's argument, it would be all but impossible for a trustee to recover on a preferential transfer if the trustee were seeking a large recovery against a third party. The Court would be required to try all other such claims before it could proceed to try any preference action. The Court must value the potential recovery on such claims based upon the evidence presented at the trial of the preference action. The Court finds the Trustee's opinion of the value of the claim against the third party to be realistic, and the Court has been shown no reason why the Trustee's value should be rejected. The Court also notes that if the Trustee is able to recover on the claim in an amount sufficient to permit a 100% distribution to unsecured creditors, Fickling & Walker will be paid in full on its claim against the bankruptcy estate, which claim results from the Trustee's recovery of the preferential transfers received by Fickling & Walker. *Brent Explorations, Inc. v. Karst Enterprises, Inc. (In re Brent Explorations, Inc.)*, 31 B.R. 745, 10 Bankr.Ct. Dec. 1123 (Bankr.D.Colo.1983); *Belfance v. BancOhio/National Bank (In re Gastaldo)*, 13 B.R. 808 (Bankr.N.D.Ohio 1981); 4 Collier on Bankruptcy ¶ 547.54 (15th ed. 1984). Accordingly, the Court holds that the greater percentage test is met in this adversary proceeding.[7]

---

**6.** The Court notes Fickling & Walker's objection to the testimony of the Trustee. Mr. Tidwell serves in two capacities in this case, as Trustee and as attorney for the Trustee. Although it is generally true that an attorney cannot serve as a witness, *see* ABA Code of Professional Responsibility DR 5–102; *Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342 (5th Cir.1958), a blanket prohibition against an attorney-trustee testifying would place an undue burden on the bankruptcy estate and would frustrate the policies of 11 U.S.C.A. § 327(d) (West 1979). The Court ruled at trial that the objection went to the weight of the evidence presented by the Trustee. Fickling & Walker argues that since the results obtained by the Trustee are a factor in awarding his attorney's fees, *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.

1974), the Court should give little weight to the Trustee's testimony. The Court has considered this argument, but finds the Trustee's testimony to be credible on the issue of the greater percentage test.

**7.** Furthermore, this Court may take judicial notice of Debtor's bankruptcy case files in determining whether the greater percentage test is met. *Rovzar v. Chemical Sales & Service Co. (In re Saco Local Development Corp.)*, 30 B.R. 862 (Bankr.D.Me.1983). The parties stipulate that such an inquiry is proper in this adversary proceeding. Upon review of the files, the Court is unable to conclude that a 100% distribution is a reasonable likelihood in this case.

Having determined that the checks constitute preferential transfers under section 547(b), the Court now turns to the contention of Fickling & Walker that the payments are excepted from the workings of section 547(b) by subsection (c)(2) of section 547. That subsection provides:

(c) The trustee may not avoid under this section a transfer—

. . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

11 U.S.C.A. § 547(c)(2) (West 1979). The Court concludes that the checks were payment of a debt that was incurred in the ordinary course of business of Debtor and Fickling & Walker, and that the payments were made in the ordinary course of business of Debtor and Fickling & Walker. The Court also concludes that the payments were made according to ordinary business terms. The Court now turns to the issue of whether the payments were made within forty-five days of the debt being incurred.

The Trustee argues that the debt of Debtor to Fickling & Walker was incurred at the time the policy period ended on January 1, 1981, and therefore the July 14, 1981, and the July 31, 1981, checks were delivered to Debtor outside the forty-five-day period.[8] Fickling & Walker argues that Debtor did not become legally obligated to pay until the second audit was performed and accepted by Debtor, and that the transfers therefore were within the forty-five-day period.

The Bankruptcy Code does not state when a debt is incurred. In 11 U.S.C.A. § 101(11) (West 1979), debt is defined as a liability on a claim. Claim is defined as follows:

"claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C.A. § 101(4) (West 1979). As a general rule, debts are incurred when the debtor becomes legally obligated to pay, not when the creditor bills the debtor. Generally, debts are incurred when goods are delivered or services performed. *See generally Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.)*, 695 F.2d 833 (5th Cir.1983); *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981); *Trauner v. Stephenson Associates, Inc. (In re Valles Mechanical Industries, Inc.)*, 20 B.R. 350, 9 Bankr.Ct. Dec. 334, 6 Collier Bankr.Cas.2d 859 (Bankr.N.D.Ga.1982).

In *Carmack v. Zell (In re Mindy's, Inc.)*, 17 B.R. 177, 5 Collier Bankr.Cas.2d 1451 (Bankr.S.D.Ohio 1982), the debtor entered into long-term rental contracts as lessee. Under the contracts, rent was due in advance on the first day of each month. The contracts provided that the rental would be a percentage of gross sales for each month with a stated minimum rent. Under the contracts, the lessee was required to tender, within ten days after the close of a month, the monthly sales figures and the appropriate check. In a preference action

---

8. For purposes of section 547(c)(2), payment is deemed to be made upon delivery of the checks. *Tidwell v. Atlanta Gas Light Co. (In re Georgia Steel, Inc.)*, Bankr.L.Rep. ¶ 69,797 (Bankr.M.D. Ga.1984); *O'Neill v. Nestle Libbys P.R., Inc.*, Bankr.L.Rep. ¶ 69,742 (1st Cir.1984).

to recover several rental payments, the court stated:

> [W]hile the January rent was due on January 1, calculation of the actual amount due could not be made until after January 31.... [T]he check for payment of January rent on the Mentor Mall, was thus drawn on February 5, 1980, shortly after the January sales figures would have been available. All this is to say that the 5 payments made by the debtor which are the subject of this preference action were substantially contemporaneous to the time when such payment could be calculated.... As can be seen from a review of the five payments made in this case, no check was paid more than 45 days subsequent to the date upon which the actual rental obligation for the prior month could be calculated and thus due under the terms of the various leases....

*Id.* at 179–80, 5 Collier Bankr.Cas.2d at 1454–55. The court held that the monthly rent was incurred at the close of the month since it was then that sales figures were available, and the actual rent could be calculated.

 *In re Mindy's* is analogous to the instant adversary proceeding. In each case, payment was to be based on a percentage of sales. In each case, the payment could not be calculated until the close of the audit period. This Court concludes that the debt of Debtor to Fickling & Walker was incurred on January 1, 1981, the close of the policy period since it was at that time the debt could be calculated.

In this adversary proceeding, Debtor rejected the first audit, and Fickling & Walker argues that there could be no debt until the second audit was completed and accepted by Debtor. In *Trauner v. Stephenson Associates, Inc. (In re Valles Mechanical Industries, Inc.)*, 20 B.R. 350, 9 Bankr.Ct. Dec. 334, 6 Collier Bankr.Cas.2d 859 (Bankr.N.D.Ga.1982), the court stated: " 'Incurred' does not necessarily imply

'due.' ... For example, the mere fact that a bill is never sent does not mean that an obligation has not been created, but it means only that payment is not yet due." *Id.* at 352–53, 9 Bankr.Ct. Dec. at 335, 6 Collier Bankr.Cas.2d at 861. There is thus a distinction between an obligation being incurred and payment becoming due on an obligation. Debtor's debt to Fickling & Walker was incurred on January 1, 1981, when the sales records were complete, but payment simply was not due until an accurate audit was completed.

In the Court's opinion, Debtor's rejection of the first audit has no effect on the incurring of the debt. Under the theory asserted by Fickling & Walker, any time an invoice (or in this adversary proceeding an audit) is disputed, the forty-five-day period will not begin to run until the dispute is resolved. This result was not intended by Congress. The Court notes the testimony of an employee of Fickling & Walker that there could be no liability to pay the premium until the audit was accepted by Debtor. The Court has found no provision in the policy supporting this testimony, and the Court does not find it realistic that Debtor could escape liability for the premiums by continually declining to accept the audit. Accordingly, the Court holds that Debtor's debt to Fickling & Walker was incurred on January 1, 1981, the close of the policy period. Since the transfers occurred more than forty-five days from January 1, 1981,[9] section 547(c)(2) is inapplicable. Therefore, the Trustee is entitled to recover $17,224.00 from Fickling & Walker.

The Trustee requests that the costs of this adversary proceeding be taxed against Fickling & Walker. Because the Trustee has shown no basis for such an award, the request must be denied.

---

9. Debtor drew checks on July 14, 1981, and July 31, 1981. For purposes of section 547(c)(2), payment is deemed made upon delivery of the check. *Tidwell v. Atlanta Gas Light Co. (In re Georgia Steel, Inc.)*, Bankr.L.Rep. ¶ 69,797 (Bankr.M.D.Ga.1984).