**In re H & A CONSTRUCTION CO., INC., Debtor.**

**Thomas A. HICKEY, Trustee, Plaintiff,**

**v.**

**THOMAS G. GALLAGHER, INC.**
**Maurer & Sforza, Inc., E.G.**
**Sawyer, Inc., Defendants.**

**Adv. Nos. 83–770, 83–773 and 83–774.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 23, 1986.

Hertz N. Henkoff, Barron & Stadfeld, Boston, Mass., for plaintiff.

Peter J. Gagne, Corwin & Corwin, Boston, Mass., for defendants.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The matters before the Court are the complaints filed by Thomas J. Hickey, the Trustee of H & A Construction Co., Inc. ("H & A" or the "Debtor") on September 7, 1983 against Thomas G. Gallagher, Inc. ("Gallagher"), Maurer & Sforza, Inc. ("Maurer") and E.G. Sawyer, Inc. ("Sawyer") (collectively, the "defendants"). The Trustee alleges that the defendants received preferential transfers pursuant to 11 U.S.C. § 547(b). A hearing on all the complaints was held on June 20, 1986. At that time, the parties submitted a stipulation of facts, thereby eliminating the need for an evidentiary hearing, and the Court requested that briefs be filed. The following legal issues emerge from the briefs submitted:

1) Whether the payments made by the Debtor to the defendants within the 90 day period preceding the filing of the bankruptcy, pursuant to the terms of the Debtor's subcontracts with the defendants, were transfers of property of the Debtor;

2) Whether the debts incurred by the Debtor, for purposes of 11 U.S.C. § 547(c)(2), were incurred when work was performed by the defendants or when payments were required under the subcontracts; and

3) Whether, under 11 U.S.C. § 547(c)(4), new value in an amount greater than the amount of a preferential transfer may be set off against a subsequent preferential transfer.

## FACTS

In August 1982, the Debtor entered into a prime contract with the Massachusetts General Hospital ("MGH") for renovation and construction of its Biomedical Engineering Building (Project # 1). In September 1982, the Debtor entered into another prime contract with MGH for renovation

and construction of its Computer Science Laboratory (Project # 2).

On October 6, 1982, the Debtor entered into a subcontract with Maurer for the heating, ventilation and air conditioning ("HVAC") work required under the prime contract for Project # 1 for a price of $69,-000. On October 12, 1982, the Debtor entered into a subcontract with Sawyer for performance of the electrical work required under its prime contract for Project # 2 for a price of $152,000. Shortly thereafter, on October 22, the Debtor subcontracted with Gallagher for performance of plumbing and HVAC work required under its prime contract for Project # 2 for a price of $271,-400.

H & A's prime contracts with MGH for Projects # 1 and # 2 were the identical AIA (American Institute of Architects) form of contract and differed only with respect to the scope of work and price. Both prime contracts contained the following provisions regarding periodic payments:

*Article 13.1* The Contractor shall at least ten days before each payment falls due, deliver to the Architect an itemized statement ... showing ... all moneys [sic] paid out or costs incurred ... on account of ... Work during the previous month....

*Article 14.1* The Architect will review the Contractor's Application for Payment and will promptly take appropriate action thereon ... Such amount as he may recommend for payment shall be payable by the Owner not later that the last day of the month.

*General Conditions Article 9.5.2* The Contractor shall promptly pay each Subcontractor, upon receipt of payment from Owner, out of the amount paid to the Contractor on account of such Subcontractors Work....

H & A's subcontracts with the defendants were in the identical form and included the following provision regarding periodic payments:

....the Contractor agrees that he will pay the Sub-contractor, in progress payments, the sum of $ ... for materials and work, said amount to be paid as follows: 90% of all labor and materials which has [sic] been fixed in place by the Sub-contractor, to be paid on or about the thirtieth of the following month....

Maurer commenced its subcontract work in October 1982; Sawyer commenced work in October 1982; and Gallagher commenced work in November 1982. During construction, all H & A subcontractors, including the defendants, submitted monthly requisitions to H & A for periodic payments. These requisitions were submitted prior to the end of the calendar month in which work was performed, but included amounts based on a percentage of the subcontract work each subcontractor estimated would be in place through the end of the month.

On both Projects, the Debtor submitted applications for periodic payment to MGH which included specific amounts on account of work performed by the defendants during the pay period. MGH then approved each of the applications for payments. The dates of approval by MGH were shown on the face page of each application. MGH paid the amount of each application to H & A within a week of the approval date. The periodic payments of Maurer, Sawyer and Gallagher were processed and paid as shown in Appendix 1.

The parties do not dispute the fact that H & A's payments to Maurer, Sawyer and Gallagher, which the Trustee seeks to recover, were for antecedent debts incurred in the ordinary course of H & A's and the subcontractors' businesses; were paid in the ordinary course of business affairs between H & A and the subcontractors; were made according to ordinary business terms; and were made within 90 days of H & A's bankruptcy petition, which was filed on March 29, 1983, at a time when H & A was insolvent.

Maurer furnished new value after January 7, 1983 in the following amounts:

| Date | Alleged Preference | New Value | Net Alleged Preference |
|---|---|---|---|
| 1/7/83 | $17,820 | $13,567 | $4,253 |
| 2/11/83 | 9,000 | 3,783 | 5,217 |
| 3/9/83 | 7,500 | 0 | 7,500 |

Sawyer furnished new value after January 19, 1983 in the following amounts:

| Date | Alleged Preference | New Value | Net Alleged Preference |
|---|---|---|---|
| 1/19/83 | $29,700 | $43,508 | -$13,808 |
| 3/8/83 | 38,000 | 7,433 | 30,567 (16,759 if prior unused new value of $13,808 is carried forward) |
| 3/21/83 | 20,000 | 5,146 | 14,854 |

Gallagher furnished new value after March 9, 1983 in the following amounts:

| Date | Alleged Preference | New Value | Net Alleged Preference |
|---|---|---|---|
| 3/9/83 | $71,181 | $ 9,870 | $61,311 |
| 3/18/83 | 35,000 | 14,258 | 20,742 |

## CONCLUSIONS OF LAW

### I

Section 547(b) provides:

Except as provided in subsection (c) ... the trustee may avoid any transfer of *property of the debtor*

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made when the debtor was insolvent;

(4) made ... within 90 days before the date of filing the petition ...

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis supplied). The Trustee has the burden of proving each element of a preference. *In re Garris*, 36 B.R. 842 (Bankr.E.D.Pa.1984); *In re Schick Oil & Gas, Inc.*, 35 B.R. 282 (Bankr. W.D.Okla.1983). Here, the defendants dispute a key element: whether there was a transfer of property of the debtor. The defendants argue that H & A received funds from MGH in trust for the specific purpose of distributing them as required by the prime contract and was thus a mere conduit for the funds earmarked for the defendants as subcontractors. Indeed, the defendants contend that there was an express trust created by Article 9.5.2 of the prime contract's general conditions (i.e., "The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner...."). Alternatively, the defendants contend that the principle of unjust enrichment creates a constructive trust in their favor.

Pursuant to section 541 of the Bankruptcy Code, the estate succeeds only to the title and rights in property held by the debtor. Thus, where the debtor is in possession of property impressed by a trust which is valid under the Code, the estate will generally hold such property subject to the outstanding interests of the beneficiaries. 4 L. King, *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1985).

When property of the estate is alleged to be held in trust, the burden rests upon the claimant to establish the original trust relationship. In short, the defendants in this case must (1) establish title; (2) identify the trust fund or property; and (3) trace the property in the event the trust fund or property has been mingled with the general property of the debtor. *Id. see also Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 969 (5th Cir.1983).

Since the existence and nature of the Debtor's interest in property is governed by nonbankruptcy law, reference must be made to the law of Massachusetts on trusts. The defendants' burden in the instant case is exceedingly difficult for two reasons. In the first place, as the defendants admit, there are no Massachusetts cases dealing with the question of whether a trust is imposed upon a general contractor under a contractual mandate to pay subcontractors their portion of the general contractor's requisitions. Secondly, unlike the situation in some states, the Massachusetts legislature has not adopted a builders' trust fund statute,[1] and no statutory provi-

---

1. For example, Michigan has enacted a law that provides in relevant part: "'the building con-

sions exist apart from the mechanic's lien provisions, *cf.* M.G.L. c. 254, § 1 et seq., requiring contractors to pay in full all materialmen or subcontractors from funds they receive from an owner.

In *Becker v. Dutton*, 269 Mass. 320, 324, 168 N.E. 804 (1929), the Massachusetts Supreme Judicial Court indicated that

> whether a trust is created by a contract is to be ascertained by the words used in that contract or by the terms of that contract, however phrased, which show in the light of the surrounding circumstances that the parties intended by the executed instrument to create an express trust in furtherance of the object sought to be attained.

The Court's reading of Article 9.5.2 does not lead it to the conclusion that the parties intended to establish an express trust. Although the defendants are correct in asserting that the word "trust" need not be used and that the intent to create a trust may be inferred from the language of the contract, the Court is simply not persuaded, particularly in the absence of statutory or case authority, that the parties intended to create an express trust through the device of a standard form of contract.

The Court is equally unpersuaded by the defendants' alternative argument that a constructive trust is warranted to prevent unjust enrichment.

> A constructive trust is a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other *where the legal title to the property was obtained by fraud or in violation of a fiduciary relation* or where information confidentially given or acquired was used to the advantage of the recipient at the expense of one who disclosed the information.

tract fund paid by any person to a contractor ... shall be considered ... to be a trust fund, for the benefit of ... contractors, laborers, subcontractors or materialmen, and the contractor shall be considered the trustee of all funds so

*Superior Glass Co., Inc. v. First Bristol County National Bank*, 8 Mass.App.Ct. 356, 360–61, 394 N.E.2d 972 (1979), *aff'd*, 380 Mass. 829, 406 N.E.2d 672 (1980) (emphasis supplied). *See also Kelly v. Kelly*, 358 Mass. 154, 260 N.E.2d 659 (1970); *Sanguinetti v. Nantucket Construction Co., Inc.*, 5 Mass.App.Ct. 227, 361 N.E.2d 954 (1977). While the Court is not unsympathetic to their position, the defendants have failed to establish the existence of a fiduciary relationship. Although the defendants argue that the mandatory language directing H & A to pay its subcontractors from payments MGH made to it accords with a fiduciary relationship and that such a relationship may be determined from the facts of each case, *Broomfield v. Kosow*, 349 Mass. 749, 212 N.E.2d 556 (1965), the Court finds that the language of Article 9.5.2 is insufficient to impose fiduciary duties upon H & A. Where as here, H & A received funds from MGH and commingled them with its own monies, a debtor-creditor relationship comports more closely with the obligation imposed upon H & A by the language of Article 9.5.2 than a trust or fiduciary relationship. As a consequence, the Court concludes that the defendants have failed to meet their burden of proof with respect to the creation of a trust, either express or constructive, and that transfers of the debtor's property took place within the meaning of section 547.

## II

Section 547(c)(2) provides:

The trustee may not avoid ... a transfer—

> (2) to the extent that such transfer was—
>
> (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made not later than 45 days after such *debt was incurred;*

paid to him for building construction purposes. Mich.Comp.Laws Ann. § 570.151 (1967).' " *Selby v. Ford Motor Co.*, 590 F.2d 642, 643–44 (6th Cir.1979).

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms....

11 U.S.C. § 547(c)(2) (emphasis supplied).[2] The burden of proving that all four elements have been met rests upon the defendants. *Matter of Foreman Industries, Inc.,* 59 B.R. 145, 153 (Bankr.S.D.Ohio 1985). The only element as to which a dispute exists with respect to this subsection is the second element involving the so-called 45 day rule.[3] The Bankruptcy Code does not define when a debt is incurred. *Matter of Foreman Industries, Inc.,* 59 B.R. at 154; *see also* Levin, "An Introduction to the Trustee's Avoiding Powers," 53 Am.Bankr.L.J. 173 (1979). The prevailing view is that debts are incurred when the debtor becomes legally obligated to pay, not when the creditor bills the debtor. Generally, debts are incurred when goods are delivered or services are performed. *See, e.g., Matter of Emerald Oil Co.,* 695 F.2d 833, 837 (5th Cir.1983); *Barash v. Public Finance Corp.,* 658 F.2d 504, 511 (7th Cir.1981); *Matter of Foreman Industries, Inc.,* 59 B.R. 145, 154 (Bankr.S.D.Ohio 1985); *Matter of Georgia Steel, Inc.,* 58 B.R. 153, 158 (Bankr.M.O. Ga.1984); *In re Keydata Corp.,* 37 B.R. 324, 327 (Bankr.D.Mass.1983); *In re Morton Shoe Companies, Inc.,* 36 B.R. 14, 16 (Bankr.D.Mass.1983); *In re Saco Local Development Corp.,* 25 B.R. 876, 879 (Bankr. D.Me.1982).

■ The defendants argue that the Debtor had no statutory or common law obligation to pay them until the completion of their contracts, and that they had no cause of action against H & A until the completion of all the work required of them under their contracts, *Rich v. Arancio,* 227

Mass. 310, 313, 178 N.E. 743 (1931). *See also In re Transpacific Carriers Corp.,* 50 B.R. 649, 652 (Bankr.S.D.N.Y.1985) ("If the contracted for performance is an entire indivisible unit ... the payment obligation is deemed to arise upon completion of performance."). In their view, the progress payments they received were not for any debt arising from performance of incremental units of work. Rather, the progress payments were merely advances, made for their convenience, on account of the total contract sum, *Butterfield v. Byron,* 153 Mass. 517, 524, 27 N.E. 667 (1891). Thus, the defendants contend that the contract provisions obligating H & A to pay them on or about the 30th of the month following the month in which labor and materials were furnished created the debts for purposes of section 547(c)(2) at the time those payments were contractually required since their performances were not complete at the time of the transfers. Under this view, all the payments to the defendants at issue were within 45 days of the dates upon which the debts were incurred. *See* Appendix 1.

In contrast to the defendants' position, the Trustee's position is straight forward. He maintains the debts were incurred on a daily basis when the work was performed and materials were supplied in the month preceding the month when H & A became obligated to pay the defendants. According to the Trustee, the contract terms merely set the time of payment and did not create a condition precedent to payment. *A.J. Wolfe & Company v. Baltimore Contractors, Inc.,* 355 Mass. 361, 244 N.E.2d 717, 720 (1969). Pursuant to this view, all payments to the defendants, except perhaps payments for work performed on the

---

2. The 45 day requirement was eliminated from section 547(c)(2) by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353. Section 553(a) of the 1984 Amendments states that "the amendments made by this title shall become effective to cases filed 90 days after the date of the enactment of this act." Thus, the prior provisions of section 547 continue to be applicable to cases such as this one that

were pending prior to October 8, 1984. 4 L. King, *supra* at ¶ 547.03.

3. Specifically, the parties do not dispute when payment was made. In this circuit, payment is made for purposes of section 547(c)(2) upon delivery of a check. *O'Neill v. Nestle Libbys P.R., Inc.* 729 F.2d 35, 38 (1st Cir.1985).

last days of the subcontractors' billing periods, were outside the 45 day period.

The Court observes that there is merit to both positions. The Court finds that the debts were incurred not precisely when the work was performed but rather at the end of the subcontractors' billing periods when it became possible for the subcontractors to ascertain, or at least estimate, the value of "90% of all labor and material which has been fixed in place."

Although, the defendants maintain that the general rule that debts are incurred when work is performed does not apply where, as here, there is an unfinished contract, the Court finds that the terms of the subcontractor agreements provide for incremental payments for work performed and material provided. Although an issue relative to whether a contract is entire or divisible may be important in the context of a breach by either party, the Court finds that, for purposes of the 547(c)(2) defense, the distinction between entire and divisible contracts is unhelpful. Furthermore, the defendants argument is so convoluted as to be unpersuasive.

The Court agrees with the Trustee that the contracts merely set the times for payments and the condition precedent for payment was the performance of work and the provision of supplies. However, under the Courts' analysis, the debts were incurred at the end of the defendants billing period. As a consequence, the Court is in a position to find that some payments were not preferential. Although neither the Trustee nor the defendants argued, in the alternative, that the Court should adopt the position that the end of the subcontractors' billing periods is the date when H & A incurred debts to the subcontractors, the stipulation of facts contains sufficient information for the Court to so find. Additionally, there are cases analogous to the instant one where courts have found that debts are incurred when amounts due can be calculated. *Matter of Georgia Steel, Inc.,* 58 B.R. 153 (Bankr.M.D.Ga.1984); *In re Mindy's, Inc.,* 17 B.R. 177 (Bankr.S.D.Ohio 1982).

In *Matter of Georgia Steel, Inc.,* the court held that a debtor's debt to an insurance agency was incurred at the close of the policy period. The court stated: "[i]n each case, payment was to be based on a percentage of sales. In each case, the payment could not be calculated until the close of the audit period. This Court concludes that the debt ... was incurred ... [at] ... the close of the policy period since it was at that time the debt could be calculated." *Matter of Georgia Steel, Inc.,* 58 B.R. at 159.

In *In re Mindy's, Inc.,* the debtor was a lessee under several long-term rental contracts, providing that rent would be a percentage of gross sales with a stated minimum rent. Under the contracts, rent was due in advance on the first day of each month and the lessee was required to tender monthly sales figures and a check within ten days after the close of the month. The court held, in a preference action to recover rental payments, that the debts were incurred when calculation of the actual amount due could be made. *In re Mindy's, Inc.* 17 B.R. at 179–80.

Although the requisitions submitted to H & A by the subcontractors were submitted prior to the end of the subcontractors' billing periods, they contained estimates of the amount of work and materials to be supplied through the end of those periods. Thus, the Court finds that the end of the billing period coincides with both the time when the amounts of the debts could be calculated and when the work and supplies were actually provided for those periods. In accordance with this decision, only the following payments were preferential: (1) the January 19th payment to Sawyer in the amount of $29,700; (2) the March 8th payment to Sawyer in the amount of $27,900; (3) the March 21st payment to Sawyer in the amount of $20,000; (4) the March 9th payment to Gallagher in the amount of $5,400; and (5) the March 18th payment to Gallagher in the amount of $35,000.

III

Section 547(c)(4) provides:

(c) The Trustee may not avoid a transfer— ... to the extent that,

(4) after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor....

11 U.S.C. § 547(c)(4). The sole issue on new value is whether Sawyer can carry forward the unused new value of $13,808 from the January payment and apply it to the March payment.[4] As the Trustee correctly perceives, the defendants are attempting to revive the "net result rule," a judicially created doctrine developed to correct the perceived inequities in the Bankruptcy Act of 1898. *Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248, 250 (D.Me.1984); *In re Thomas W. Garland, Inc.*, 19 B.R. 920, 922 (Bankr.E.D.Mo.1982).

Like the overwhelming majority of courts, this Court finds that the "net result rule" has no validity under the Bankruptcy Code.

Section 547(c)(4) ... [is] ... a subsequent advance rule which protects a transfer from preference attachments to the extent that a creditor thereafter replenishes the estate. The new value is to be netted only against a previous transfer not against any subsequent transfers.

*Leathers v. Prime Leather Finishes, Inc.*, 40 B.R. at 250. *See, e.g., In re Fulghum Construction Corp.*, 706 F.2d 171 (6th Cir. 1983); *In re American International Airways, Inc.*, 56 B.R. 551 (E.D.Pa.1986); *In re Bellanca Aircraft Corp.*, 56 B.R. 339 (Bankr.D.Minn.1985). Thus, new value cannot be carried forward from one period and applied to the next preferential payment made. In view of the extensive discussions of the "net result rule" in the cases cited, further analysis by the Court is patently unnecessary. The Court, therefore, finds that, because of the furnishing of new value, Sawyer's net preferences were $20,467 on March 8th and $14,854 on March 21st; and Gallagher's net preference was $20,742 on March 18th.

In view of the foregoing, the memoranda and arguments of counsel, whether or not specifically mentioned herein, and the entire record of these cases, the Court hereby enters judgment for Maurer in Adversary No. 83–773; and judgment for the Trustee in Adversary Nos. 83–770 and 83–774. Sawyer is hereby ordered to forthwith turnover the sum of $35,321 to the Trustee; and Gallagher is hereby ordered to forthwith turnover the sum of $20,742 to the Trustee. The Court grants leave to Sawyer and Gallagher to file proofs of claims within thirty days from the expiration of the appeal period (or any final determination thereof) for the amounts ordered to be returned to the Trustee.

APPENDIX 1

Maurer's periodic payments were processed and paid as follows, by H&A:

| Maurer Billing Period | Amount Requested | H&A Billing Period (thru date) | Amount Included for Maurer in H&A Application | Date H&A Payment Approved By Mass. General | Date Due Maurer Under Sub K | Date Paid Maurer | Amount Paid Maurer | Days from Sub K Due Date to Date of Payment |
|---|---|---|---|---|---|---|---|---|
| Oct. 82 | $ 21,600 | Oct. 29 | $ 21,600 | Nov. 19 | Nov. 30 | Dec. 7 | $ 21,600* | 8 days |
| Nov. | $ 15,660 | Nov. 30 | $ 19,800 | Dec. 17 | Dec. 30 | Jan. 7 | $ 17,820 | 8 days |
| Dec. | $ 22,374 | Jan. 7 | $ 14,420 | Jan. 21 | Jan. 30 | Feb. 11 | $ 9,000 | 12 days |
| Jan. | | Feb. 14 | $ 14,170 | Feb. 25 | Feb. 28 | March 9 | $ 7,500 | 9 days |
| Feb. | $ 6,626 | | | | | | | |
| | $ 7,362 | | | | | | | |

*Not claimed by Trustee as Preference Payment

Sawyer's periodic payments were processed and paid as follows by H&A:

4. The Court notes that, in view of its decision in Section II of this memorandum, the issue arises with respect to Gallagher's payments as well.

| Sawyer Billing Period | Amount Requested | H&A Billing Period (thru date) | Amount Included for Sawyer in H&A Application | Date H&A Payment Approved By Mass. General | Date Due Sawyer Under Sub K | Date Paid Sawyer | Amount Paid Sawyer | Days from Sub K Due Date to Date of Payment |
|---|---|---|---|---|---|---|---|---|
| Nov. 82 | $ 29,700 | Nov. 30 | $ 33,000 | Dec. 22 | Dec. 30 | Jan. 19 | $ 29,700 | 20 days |
| Dec. 82 | $ 27,900 | Jan. 10 | $ 27,900 | Jan. 25 | Jan. 30 | March 8 | $ 27,900 | 37 days |
| Jan. 83 | $ 40,500 | Feb. 15 | $ 36,216 | Feb. 22 | Feb. 28 | March 8 | $ 10,100 | 8 days |
| | | | | | | March 21 | $ 20,000 | 21 days |
| Feb. 83 | $ 23,400 | | | | | | | |

Gallagher's periodic payments were processed and paid as follows by H&A:

| Gallagher Billing Period | Amount Requested | H&A Billing Period (thru date) | Amount Included for Gallagher in H&A Application | Date H&A Payment Approved By Mass. General | Date Due Gallagher Under Sub K | Date Paid Gallagher | Amount Paid Gallagher | Days From Sub K Due Date to Date of Payment |
|---|---|---|---|---|---|---|---|---|
| Nov. | $ 21,000 | Nov. 30 | $ 21,000 | Dec. 22 | Dec. 30 | Jan. 7 | $ 18,900* | 8 days |
| Dec. | $ 6,000 | Jan. 10 | $ 6,000 | Jan. 25 | Jan. 30 | Mar. 9 | $ 5,400 | 37 days |
| Jan. | $136,363 | Feb. 15 | $136,363 | Feb. 22 | Feb. 28 | Mar. 9 | $ 65,781 | 9 days |
| | | | | | | Mar. 18 | $ 35,000 | 18 days |
| Feb. | $ 52,300 | | | | | | | |
| Mar. | $ 34,000 | | | | | | | |

*Not claimed by Trustee as a Preference Payment