SUPERIOR GLASS COMPANY, INC. *vs.* FIRST BRISTOL COUNTY
NATIONAL BANK & another[1]
(and a companion case[2]).

Bristol. February 7, 1980. — June 5, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Contract,* Building contract. *Bond,* Construction contract bond. *Trust,*
Constructive trust.

In an action by two subcontractors seeking to recover from an owner of
property unpaid balances owed to them by a general contractor, find-
ings that the owner, a bank, had lulled the subcontractors into assum-
ing that their creditor positions were protected, even though it knew of
the contractor's unstable financial condition, and that the bank, as
construction lender, then arranged for its final construction advance to
the contractor to be endorsed back to the bank in satisfaction of the
loan, even though it knew of the contractor's unpaid debts to the sub-
contractors, warranted the imposition of a constructive trust upon the
bank for the funds it caused to be paid to its account by the contractor
which was subject to the equitable claims of the subcontractors.
[830-834]

Two CIVIL ACTIONS commenced in the First District Court
of Bristol on August 5, 1975, and in the Superior Court on
March 11, 1976, respectively.

Upon removal of the first action to the Superior Court,
the cases were heard by *Sahady*, J., a District Court judge
sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Marc E. Antine* for the First Bristol County National
Bank.

---

[1] C.A. Thomson Construction Company, Inc.

[2] M.F. Cash Corporation *vs.* First Bristol County National Bank &
Conrad A. Thomson, d/b/a C.A. Thomson Construction Company.

*Stephen D. Clapp* for the Superior Glass Company, Inc. & another.

BRAUCHER, J. The plaintiffs are two unpaid subcontractors on a construction project. They recovered judgments against the owner on a theory of unjust enrichment, and the Appeals Court affirmed the judgments, holding that the owner had a "fiduciary duty" derived "from the peculiar combination of circumstances in this case." *Superior Glass Co.* v. *First Bristol County Nat'l Bank,* 8 Mass. App. Ct. 356, 362 (1979). We granted the owner's application for further appellate review. We disapprove the "fiduciary" label, but we affirm the judgments on the basis of unjust enrichment.

We summarize the judge's findings. In 1974 the defendant bank awarded to the defendant Thomson (contractor) a contract for the construction of a branch facility for $134,451. At the time the contractor owed the bank about $42,000 in unsecured loans. The contractor was required to furnish a performance bond on A.I.A. Form A311, including a "Labor and Material Payment Bond." The contractor began work in April, 1974, without obtaining the bond, and the bank soon learned that he was unbondable because of his financial condition. The bank decided to proceed without the bond.

Later in 1974 the plaintiffs agreed with the contractor to be the glazing and paving subcontractors. Each noted the bond requirement and claimed to have relied on it. Neither was aware that the contractor had not furnished a bond. The bank knew or should have known of the work to be done by the plaintiffs.

Early in 1975 the bank had reason to believe that the contractor was not in the best of financial health. Before February 21, 1975, the bank knew that the contractor owed subcontractors a total of more than $33,000, including $2,424 owed to one of the plaintiffs and $4,951.30 to the other. On February 21, the bank issued a cashier's check to the contractor in the amount of $13,728.30, the balance due on the contract. The check was immediately endorsed to

the bank, which kept $12,500 on account of a debt owed by the contractor and deposited the balance to the contractor's account.

Additional facts, substantially undisputed, were not reflected in the judge's findings. Neither subcontractor inquired whether a bond had been furnished until after the work was done, and there was no evidence of any representation or notification by the bank on that subject. There was no evidence that either subcontractor took any steps to perfect a lien under G. L. c. 254. The bank's architect testified that before approving progress payments to the contractor he generally required the contractor to submit releases of liens by the subcontractors, but that he approved payments without such releases during a period when the contractor appeared to have "satisfied his financial problems." The judge excluded as hearsay proposed testimony by a bank official that the contractor requested the bank to apply the last payment to an outstanding loan to him from the bank. On the day of the last payment the bank received an assignment by the contractor of any further amounts due under the contract.

The contract provided, "Nothing contained in the Contract Documents shall create any contractual relation between the Owner or the Architect and any Subcontractor or Sub-subcontractor," and the judge ruled that the bank had no contractual responsibility to subcontractors to see that a bond was furnished, citing *Morse Bros. Elec. Co. v. Martin Shore Realty Co.*, 344 Mass. 81 (1962). Moreover, he ruled, the bank made "no express or implied inducements" that the plaintiffs could justifiably rely on. But, he said, the bank could not "watch itself enriched by the materials and labor supplied by the plaintiffs, and then diminish their chances of recovery for these materials and services by skimming off the top an unsecured debt owed it by the contractor." It "could not keep silent about the bond and at the same time appropriate proceeds owed it by the contractor to the exclusion of those who added value to its property."

The plaintiffs argue that the bank is subject to liability "in contract, tort and equity." The Appeals Court held

that there was no liability in contract or tort, and we do not disturb those holdings. The required form of bond, "A.I.A. Form A311," is easily accessible in the A.I.A. Building Construction Legal Citator (1975), but it does not appear in the record and it is not suggested that the judge was asked to take judicial notice of it. See *Finlay* v. *Eastern Racing Ass'n*, 308 Mass. 20, 27 (1941); McCormick, Evidence § 330 (2d ed. 1972); Fed. R. Evid. 201. We assume, without deciding, that the plaintiffs correctly assert that if such a bond had been furnished they would have been beneficiaries. See G. L. c. 149, § 29A; *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535, 542-548 (1979); *Johnson-Foster Co.* v. *D'Amore Constr. Co.*, 314 Mass. 416, 420-422 (1943). But on that assumption we find no express or implied promise by the bank that the bond would be furnished and no express or implied representation that the bond had been furnished. The waivers of lien requested by the bank are not in the record, and were not the subject of findings by the judge. The waivers may well have been invalid under G. L. c. 254, § 32, but we agree with the Appeals Court that liability cannot be imposed on the bank solely on the basis of its requests for waivers of lien. As to recovery for unjust enrichment in such cases, see Restatement, Restitution § 41 (1937).

The plaintiffs seek to bring the case within the category of "violation of a fiduciary relation," citing *Barry* v. *Covich*, 332 Mass. 338, 342 (1955). But the relation between the bank, viewed either as lender or as owner, and the subcontractors was an arm's-length business relation; "the plaintiff alone, by reposing trust and confidence in the defendant, cannot thereby transform a business relationship into one which is fiduciary in nature." *Broomfield* v. *Kosow*, 349 Mass. 749, 755 (1965). As the Appeals Court indicated, a bank as construction lender has no fiduciary obligation to see to the application of construction advances, and an owner who pays a construction requisition has no fiduciary obligation to assure that the funds paid reach unpaid subcontractors. Subcontractors may rely for assurance of pay-

ment on a properly furnished payment bond; otherwise they must rely primarily on liens pursuant to G. L. c. 254. See 8 Mass. App. Ct. at 362. Even a trustee may in some circumstances act to protect its own interests, provided that it does not act unfairly to the detriment of a beneficiary. *First Nat'l Bank* v. *Slade*, 379 Mass. 243, 248 (1979). Where an owner retains a portion of the payments due on a construction contract, it may deduct offsetting claims against the contractor, even though unrelated to the contract; and there is authority that the offset may be asserted against a surety who has paid subcontractors. *United States* v. *Munsey Trust Co.*, 332 U.S. 234, 240 (1947). There was no relationship of trust and confidence between the bank and the subcontractors.

On the other hand, we have recognized "the peculiarly equitable claim of those responsible for the physical completion of building contracts to be paid from available moneys ahead of others whose claims come from the advance of money." *Canter* v. *Schlager*, 358 Mass. 789, 795 (1971), quoting *United States* v. *Munsey Trust Co.*, 332 U.S. 234, 240 (1947). If a surety had paid the plaintiffs, its claim to funds retained by the owner would have priority over the claims of a bank that lent money to the contractor. *Canter, supra* at 795-796. Cf. *Aetna Cas. & Sur. Co.* v. *Harvard Trust Co.*, 344 Mass. 160, 174 (1962) (bank could retain payments received in good faith without actual knowledge of contractor's breach). Here the bank combined the roles of owner and moneylender; this did not relieve it of equitable obligations imposed on it in either capacity. See *First Nat'l Bank* v. *Slade*, 379 Mass. 243, 250 (1979).

As the Appeals Court pointed out, the bank's actions in the present case lulled the subcontractors into assuming that their creditor positions were protected. The bank required the circulation of contract provisions including the bond requirement, it failed to inform subcontractors when it waived the bond requirement, and it requested waivers of lien in circumstances indicating that payment would follow shortly. Knowing of the contractor's financial difficulties and the sub-

contractors' situation and lack of protection, it received the benefit of their work. Finally, at a time when it had specific information as to the amounts due to subcontractors, it gave itself a preference as a creditor out of the final payment to the contractor. We think it received that payment subject to the peculiarly equitable claims of the subcontractor plaintiffs, enforceable by way of "constructive trust." See Restatement, Restitution § 160 (1937).

*Judgments affirmed.*