In re VAPPI & CO., INC., Debtor.

**ROTMAN ELECTRICAL CO., INC., Plaintiff,**

v.

**John F. CULLEN, Trustee of the estate of Vappi & Co., Inc., and the President and Fellows of Harvard University, Defendants.**

**Bankruptcy No. 91–13914–JNG.**
**Adv. No. 91–1576–JNG.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 17, 1992.

William J. Ferguson, Jr., Gadsby & Hannah, Boston, Mass., for plaintiff.

Maureen Mulligan, Peabody & Arnold, Boston, Mass., for defendants.

John F. Cullen, trustee.

## MEMORANDUM

JAMES A. GOODMAN, Chief Judge.

### 1. INTRODUCTION

The matters before the Court are cross motions for summary judgment filed by the

Chapter 7 Trustee of the bankruptcy estate of Vappi & Co., Inc. ("Vappi" or the "Debtor") and Rotman Electrical Co., Inc. ("Rotman"). Rotman commenced an adversary proceeding against John F. Cullen (the "Trustee") and the President and Fellows of Harvard University (Harvard") in October of 1991. Through its two count complaint, Rotman seeks 1) a declaratory judgment that funds held by Harvard[1] are not property of the Debtor's estate and are subject to a constructive trust or equitable lien in favor of Rotman for the payment of a debt in the amount of $86,868[2] or 2) in the alternative, a declaratory judgment that payments received by the Debtor from Harvard on behalf of Rotman are not property of the estate and are subject to a constructive trust or an equitable lien in favor of Rotman. With respect to payments made to and received by Vappi, Rotman seeks a declaration that the Trustee must pay it out of funds now in the Debtor's estate. The relief sought by Rotman is predicated upon the Debtor's alleged breach of contract and fraud (Count I and Count II of the complaint, respectively).

## II. STANDARD FOR SUMMARY JUDGMENT

■■■■ Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable to this proceeding by Fed.R.Bankr.P. 7056. The party moving for summary judgment must establish "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The non-moving party then has the burden of establishing at least one "genuine" and "material" factual issue in order to avoid the entry of summary judgment.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). Where a party responding to a motion for summary judgment bears the burden of proof on the underlying issue, Rotman in this case, that party must establish that specific facts exist to create an authentic dispute. *Garside,* 895 F.2d at 48.

## III. FACTS

On or about July 20, 1989, the Debtor, as general contractor, entered into a written contract with Harvard to renovate Vanderbilt Hall at Harvard Medical School (the "Project"). The written contract entered into between Harvard and Debtor provided, *inter alia,* that:

a) "On all applications for Payment, the [Debtor] shall indicate the sums of money being requisitioned for payment of [the Debtor's] principal Suppliers and Subcontractors for each subdivision of Work and shall include therewith a certificate for payment and release of claims in form approved by [Harvard] stating that all such money will be used to pay named Suppliers and Subcontractors as their interests may appear within ten (10) calendar days after receipt of payment from [Harvard]. At [Harvard's] discretion and upon his [sic] request ... the [Debtor] shall provide affidavits from each of his [sic] Subcontractors which attest to the fact that they have received the previous month's payment from the Debtor." (Contract, Modifications to General Conditions, clause 9.3.1.1);

b) "The [Debtor] shall promptly pay each Subcontractor, upon receipt of payment from [Harvard], ... the amount to which said Subcontractor is entitled, reflecting the percentage actually retained, if any,

---

**1.** These funds were the subject of a Motion for Turnover filed by the Chapter 7 Trustee in this proceeding. The motion was allowed on June 5, 1992. The funds are now in an escrow account held by the Trustee pending the resolu-

tion of the outstanding issues between the Trustee and Rotman.

**2.** The Trustee contends the amount due is $85,-417.

from payments to the [Debtor] on account of such Subcontractor's Work." (Contract, General Conditions, clause 9.5.2);

c) The Debtor certify with each application and certificate for payment submitted to Harvard that "to the best of the Contractor's knowledge, information and belief the Work covered by the Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due." (Application and Certificate for Payment, AIA Document G702);

d) "Neither the final payment nor the remaining retained percentage shall become due until the [Debtor] submits to the Architect (1) an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the work for which [Harvard] or [its] property might in any way be responsible, have been paid or otherwise satisfied...." (Contract, General Conditions, clause 9.9.2); and

e) "The [Debtor] shall, as a condition precedent to final payment, sign a release form stating that the [Debtor] certifies that all payrolls, material bills, and other indebtedness connected with the Work have been paid and, in consideration of all prior payments and of a final payment, [Debtor] releases and forever discharges [Harvard] from all claims, demands, obligations, and liabilities of every kind and nature arising out of or relating to the Contract. [Debtor] will, upon request of the Architect or [Harvard], furnish [Harvard] with statements of Subcontractors and/or Suppliers substantiating prior payments by [Debtor]." (*See* Contract, Modifications to General Conditions, clause 9.9.5.1).

On or about November 15, 1989, Rotman entered into a subcontract agreement with the Debtor whereby Rotman agreed to perform certain electrical work at the Project, for and on behalf of the Debtor. The subcontract price was $1,540,000, subject to additions and deductions for changes as provided for in the subcontract agreement.

The subcontract entered into between Rotman and the Debtor provided that periodic payments would be made by the Debtor to Rotman, on account of work performed by Rotman, conditioned upon payment by Harvard to the Debtor of the amount allowed on account of Rotman's materials and work. The subcontract stated the following:

> "[a]n amount equal to 10% of the total amount of the [subcontract] Price shall be retained until final acceptance and approval of the project by [Harvard]. [Rotman] shall have no right to such retainer until paid by [Harvard]. Should [Harvard] elect to reduce the retainer, the amount released by [Harvard] shall be paid over to [Rotman] when received by the [Debtor]."

(Subcontract, Art. II, para. 3).

From approximately July 6, 1989 to February 1, 1991, Rotman furnished labor, materials and services to the Debtor and otherwise fully performed in accordance with the terms and conditions of its subcontract with the Debtor. As a result of change orders issued by the Debtor, Rotman's approved and adjusted subcontract price was increased from $1,540,000 to $1,758,610, as of the date that Rotman completed its work.

The Debtor submitted twenty applications and certificates for payment to Harvard in connection with the Project. Although the Debtor's payments to Rotman under the subcontract totalled only $1,671,924, the following payment applications were approved by Harvard and paid to the Debtor:

a) Payment Application No. 16
(Period Ending 9/30/90)

| | |
|---|---:|
| Total Electrical | $1,724,261 |
| Less Retainage | $ (7,817) |
| Certified to Rotman | $1,716,444 |

b) Payment Application No. 17
(Period Ending 10/30/90)

| | |
|---|---:|
| Total Electrical | $1,724,261 |
| Less Retainage | $ (4,817) |
| Certified to Rotman | $1,719,444 |

c) Payment Application No. 18
(Period Ending 11/30/90)

| | |
|---|---:|
| Total Electrical | $1,724,261 |
| Less Retainage | $ (2,817) |
| Certified to Rotman | $1,721,444 |

The Debtor submitted Payment Application No. 19 to Harvard for the period ending December 31, 1990 and requested therein a progress payment of $257,364. Payment Application No. 19 was approved by Harvard on January 11, 1991 and payment of the full amount requested by the Debtor was issued by Harvard to the Debtor on January 16, 1991. The Debtor's project manager represented to Harvard in Payment Application No. 19 that, upon approval of the payment application and receipt of the progress payment, the Debtor's total payments to Rotman for electrical work performed at the Project would be $1,742,640, less a contract retainer of $2,817, for a net distribution to Rotman of $1,739,823.

The Debtor submitted Payment Application No. 20 to Harvard for the period ending February 28, 1991, requesting a progress payment of $130,380. The Debtor's project manager certified to Harvard in Payment Application No. 20 that all amounts had been paid by the Debtor for work for which previous certificates for payment were issued and payments received from Harvard. Payment Application No. 20 has not been paid to the Debtor by Harvard, although the $159,380 is now in an escrow account held by the Trustee.

All payments made by Harvard to the Debtor were made more than 90 days prior to the May 6, 1991 date the petition in bankruptcy was filed. The total amount paid by Harvard to the Debtor for electrical work performed by Rotman was $1,739,823. The total amount actually paid by the Debtor to Rotman out of the sums received from Harvard was $1,671,924, leaving a balance of $86,680 ($1,758,610 − $1,671,924), plus interest and indicating that $67,899 was paid by Harvard to the Debtor that was earmarked for, but not received by, Rotman.

Harvard has received written notices from other subcontractors on the Project that the Debtor has failed to pay certain sums due under their respective subcontracts which sums, together with the amount owed Rotman, are greater than the amount of funds now in escrow. Additionally, Rotman failed to file any statutory liens pursuant to Mass.G.L. c. 254.

IV. THE ALLEGATIONS OF FRAUD

Rotman's Complaint contains allegations of fraud committed by Vappi. Specifically, the Complaint contains the following allegations:

36. Under its contract with Harvard, the Debtor executed and delivered to Harvard certified applications and certificates for payment falsely declaring that all prior progress payments and reduc-

tions in contract retainages made by Harvard had properly been accounted for and disbursed to its subcontractors (including Rotman).

37. Instead of satisfying the balance due to Rotman with these additional payments from Harvard, the Debtor wrongly diverted these funds to its own uses, and repeatedly misrepresented to Rotman that it had received no additional payments from Harvard.

38. The Debtor was unjustly enriched as a result of its misrepresentations to both Rotman and Harvard.

39. Harvard relied on the Debtor's certified statements by disbursing further progress payments to the Debtor.

40. Rotman was lulled into a false sense of security and relied to its detriment on the repeated misrepresentations of the Debtor that it had received no additional payments from Harvard.

41. The Debtor committed fraud by, *inter alia:* (a) inducing Harvard to make payments to the Debtor in reliance on false representations regarding the Debtor's past and present conduct, and (b) by denying to Rotman that the Debtor had received the payments which, in fact, it had received from Harvard.

42. In reliance on the Debtor's false representations, Harvard was "lulled" into assuming that its subcontractors had been paid and Rotman was "lulled" into a false sense of security that the Debtor was paying Rotman in accordance with the terms of their subcontract.

43. In further reliance upon the Debtor's false representations, Rotman was induced not to institute collection proceedings against the Debtor.

Rotman alleges in its complaint and in its memorandum that the Debtor made repeated misrepresentations that it had not received payments from Harvard. However, neither the complaint nor affidavits on file detail when and by whom the misrepresentations were made. In his affidavit and his deposition, Alfred Rotman, the founder and president of Rotman, does not fully identify the representatives of the Debtor with whom he spoke about the status of the contract payments. The people to whom he spoke were in Vappi's accounting department. What, if any, authority they had to discuss payments is not disclosed. Moreover, the exhibits attached to its motion for summary judgment reveal that Vappi's project manager signed the Contractor's Applications for Payment, "upon the best of his knowledge, information and belief." The extent of the project manager's authority and knowledge is not set forth in the documents filed by Rotman. Finally, Edward A. Hines, the president of Vappi, filed an affidavit in which he stated he never received any inquiries from Rotman regarding payment for work performed on the Vanderbilt Hall Project and that he never represented in any way that Vappi had not been paid by Harvard for requisitions submitted.

## V. DISCUSSION

### A. Rotman's Position

Rotman makes four arguments in favor of its motion for summary judgment. First it maintains that the funds now held in escrow are not property of the Debtor's estate. It argues that the Debtor's breach of contract—its failure to pay its subcontractors in accordance with the terms of the contract and its false representations— excuses Harvard from any contractual obligation to pay the Debtor's estate. Rotman relies upon *In re Pacific Marine Dredging and Construction,* 79 B.R. 924 (Bankr. D.Or.1987), for the proposition that Vappi's breach of contract eliminated its legal and equitable interest in the funds so that they do not become property of the estate.

In *Pacific Marine,* the court stated:
This court agrees with other courts that have found that the contractor's failure to pay for labor and materials is just as much a failure to perform and carry out the terms of the contract as an abandonment of the work. *United States v. Commonwealth of Pennsylvania, Department of Highways,* 349 F.Supp. 1370 (E.D.Pa.1972); *Atlantic Refining Company v. Continental Cas. Company,* 183 F.Supp. 478 (W.D.Pa.1960). In short,

**724**

plaintiff is not contractually obligated to pay the fund to debtor. *Due to debtor's breach of contract, the debtor does not have any legal or equitable interest in the fund. Accordingly, the fund is not property of the estate.*

*Id.* at 929 (emphasis added). According to Rotman, if the property is not part of the bankruptcy estate, the Chapter 7 Trustee has no authority to distribute it. *Cf. Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

Second, Rotman argues that the funds now in escrow should be impressed with a constructive trust. As the beneficiary of the constructive trust, Rotman then would have superior rights to the Debtor's other creditors with respect to the corpus of the trust. In support of this argument, Rotman cites *Superior Glass Co., Inc. v. First Bristol County National Bank*, 380 Mass. 829, 406 N.E.2d 672 (1980), and *In re Mill Concepts Corp.*, 123 B.R. 938 (Bankr. D.Mass.1991).

Third, Rotman, without citing any cases, relies on contract provisions to argue that it is entitled to an equitable lien on the funds in escrow. Finally, and in the alternative, Rotman maintains that with respect to the $67,899 in monies obtained by Vappi from Harvard, but unpaid to Rotman, outside of the preference period, it is entitled to either a constructive trust or an equitable lien on those funds.

█ With respect to Rotman's first argument, its reliance on *In re Pacific Marine Dredging and Construction*, 79 B.R. 924 (Bankr.D.Or.1987), is misplaced. The case simply fails to support its position. In *Pacific Marine*, the court considered an issue similar to the issue resolved by the Court of Appeals for the First Circuit in *Framingham Trust Company v. Gould–National Batteries, Inc.*, 427 F.2d 856 (1st Cir.1970), namely the rights of competing parties to a reserved fund under a construction contract. In *Pacific Marine*, a surety claimed an equitable lien in a con-

tract retainage as a result of substantial post-petition payments it made to subcontractors under a payment bond. A bank that had provided the debtor with a line of credit secured by a security interest in the debtor's accounts and general intangibles claimed it was entitled to the fund, that the fund was property of the bankruptcy estate and that the surety's lien was void pursuant to 11 U.S.C. § 362(a)(4) ("a petition ... operates as a stay ... of (4) any act to create, perfect, or enforce any lien against property of the estate"). The debtor joined the fray, arguing that the surety's lien was voidable pursuant to 11 U.S.C. § 544 (the source of the trustee's so-called "strong-arm" powers). The Court ruled in favor of the surety, stating:

> The surety has no filing obligations. The lien is one created by equity, not by statute. The cases are clear that the lien is created when the surety executes its bond with the general contractor. *United Pacific Ins. v. First National Bank of Oregon, supra* [222 F.Supp. 243] [ (D.Or.1963) ]; *Wasco County v. New England Equitable Ins. Co. et al., supra* [88 Or. 465, 172 P. 126] [ (1918) ]. In this case, [the surety's] lien was created prepetition and before any preference period defined in 11 U.S.C. § 547.

> It seems clear that the surety's lien continues until the general contractor has fulfilled all of his obligations under the contract, at which time it is extinguished. If the contractor should breach the contract and the surety is forced to pay on its bond, then the lien ripens into a claim for reimbursement against funds the owner has properly withheld.

*In re Pacific Marine Dredging and Construction*, 79 B.R. at 929. However, Rotman cannot rely upon *Pacific Marine* for the simple reason that it does not occupy the position of a surety.

█ With respect to Rotman's constructive trust and equitable lien arguments, section 541(d)[3] of the Bankruptcy Code ex-

---

**3.** Section 541(d) provides in relevant part: Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes

property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to

presses "a clear intent to keep beneficial interests on express and constructive trusts out of the bankruptcy estate under any theory." *In re Mill Concepts Corp.,* 123 B.R. 938, 945 (Bankr.D.Mass.1991). In the *Mill Concepts* case, the court went on to note that

> The constructive trust beneficiary is different from the beneficiary of an express trust in that his interest in specific property exists only when a court declares its existence in order to prevent unjust enrichment. His equities are nevertheless sufficiently compelling to entitle him to the property. And, as has been seen, Congress regarded his equitable rights as a property interest which is excludible from the bankruptcy estate. There is therefore no reason to conclude that the event of bankruptcy vitiates a claim of unjust enrichment.

*Id.* at 946. However, the circumstances under which courts declare constructive trusts must involve fraud, mistake, duress, undue influence, breach of a fiduciary duty or prevention of unjust enrichment. *Id.* at 944 (citing 1 G. Palmer, *The Law of Restitution* §§ 1.3, 1.4 (1978); 5 A. Scott, *The Law of Trusts,* §§ 461, 462 (4th ed. 1989); *Restatement of Restitution* § 160 Comment a. (1937)). Clearly, and the Court so holds, breach of contract alone does not justify the imposition of a constructive trust. Moreover, Rotman has failed to cite one case in which a court in the absence of a suretyship relationship or statutory authority has imposed a constructive trust in favor of a subcontractor on funds pertaining to the prime contract for breach of contract.

For Rotman to prevail, then, on its constructive trust/equitable lien theory, it must convince the Court that, based upon the undisputed facts, fraud exists to warrant depriving Vappi's other unsecured creditors from sharing in the escrow funds now held by the Chapter 7 Trustee.

## B. The Trustee's Position

The Trustee argues that pursuant to 11 U.S.C. § 541 all outstanding monies due

the extent of any equitable interest in such property that the debtor does not hold.

and owing on Payment Application No. 20 belong to the bankruptcy estate as there is no case law in Massachusetts that would permit the creation of an equitable lien or allow the funds to be impressed with a constructive trust. The Trustee relies upon *Erlich v. Johnson Service Co.,* 272 Mass. 385, 172 N.E. 508 (1930), and distinguishes *Superior Glass Company, Inc. v. First Bristol County National Bank,* 380 Mass. 829, 406 N.E.2d 672 (1980), the case relied upon by Rotman.

In *Erlich v. Johnson Service Co.,* the court considered preference actions brought by the bankruptcy trustee of a plumbing and heating company that had a contract with the New York Central Railroad Company at the time an involuntary petition in bankruptcy was filed against it. Just prior to the filing of the involuntary petition, the railroad had paid the debtor's subcontractors out of monies due the debtor but retained under the terms of the contract. The trustee, shortly after his appointment, demanded a return of the payments made to the subcontractors by the railroad, arguing they were voidable preferences. The court agreed, rejecting the subcontractors' arguments that the contract created an equitable lien in favor of the railroad that inured to their benefit. The court stated:

> In the case at bar there is no promise made by either the railroad or the company to pay the defendants out of any particular fund. The most that can be said is that under paragraph twenty of the contract the railroad has authority to make such payment under certain conditions, but it is not bound to do so. Consequently it does not appear that the defendants had even an enforceable contract right. *See Pike v. Anglo-South American Trust Co.* 267 Mass. 130 [166 N.E. 553]. No authority is cited and none has been found which would justify the conclusion that the defendants had a lien legal or equitable upon any fund....

> \* \* \* \* \* \*

11 U.S.C. § 541(d).

It is not contended by the defendants that they filed any notice of lien or gave any notice to the owner (the railroad) in an attempt to enforce alleged rights under G.L. c. 254 § 4. *See Prunier v. Schulman*, 261 Mass. 417, 418 [158 N.E. 785]; *Prindiville v. Boston & Worcester Street Railway*, 226 Mass. 148, 150 [115 N.E. 299]. It is difficult to conceive of a lien not resting on agreement of parties, including the party to be benefited, or on statute.

\*　　\*　　\*　　\*　　\*　　\*

It is apparent that paragraph twenty of the contract was inserted merely to protect the railroad from possible mechanics' liens upon its property. None of the cases cited by the defendants supports their contention. *Johnson v. Root Manuf. Co.* 241 U.S. 160 [36 S.Ct. 520, 60 L.Ed. 934], involved the construction of a compromise agreement. In *In re P. McGarry & Son*, 240 Fed.Rep. 400, the provisions of a surety bond were construed to be for the benefit of third persons from whom the contractor obtained materials or labor. *Prairie State Bank v. United States*, 164 U.S. 227 [17 S.Ct. 142, 41 L.Ed. 412], and *Henningsen v. United States Fidelity & Guaranty Co.*, 208 U.S. 404 [28 S.Ct. 389, 52 L.Ed. 547], recognize the right of subrogation of a surety of the contractor to sums due to the contractor but retained by the contractee under the terms of the contract until the contract has been performed. These cases are not relevant to the question involved in the case at bar. In *Walker v. Brown*, 165 U.S. 654 [17 S.Ct. 453, 41 L.Ed. 865], and *Sexton v. Kessler & Co., Ltd.* 225 U.S. 90 [32 S.Ct. 657, 56 L.Ed. 995], there was an evident intention of the parties that certain securities should be subject to an equitable lien—a different situation from the one presented in the present case, where the railroad evidently did not intend to provide security for subcontractors but intended only to protect itself.

272 Mass. at 388–90, 172 N.E. 508. *Cf. Framingham Trust Company v. Gould-*

*National Batteries, Inc.*, 427 F.2d 856 (1970).

In *Superior Glass*, 380 Mass. 829, 406 N.E.2d 672 (1980), the Supreme Judicial Court considered a situation in which the First Bristol County National Bank award a construction contract to a contractor who was indebted to it for $42,000 in unsecured loans. The contractor was unbondable, a fact known to the bank, but unknown to its subcontractors. At a time when the bank knew that the contractor owed its subcontractors in excess of $33,000, the bank paid the contractor the balance due on the contract by way of a cashier's check which was immediately endorsed to the bank in satisfaction of the contractor's obligations to it. The Supreme Judicial Court noted with approval the observations of the appellate court that "a bank as construction lender has no fiduciary obligation to see to the application of construction advances, and an owner who pays a construction requisition has no fiduciary obligation to assure that the funds paid reach unpaid subcontractors." 380 Mass. at 832, 406 N.E.2d 672. Nevertheless, the court determined that the bank's actions, in requiring the circulation of contract provisions including the bond requirement and in requesting lien waivers in circumstances indicating payments would follow, "lulled the subcontractors into assuming that their creditor positions were protected." *Id.* at 833, 406 N.E.2d 672. Accordingly, the court, citing *Restatement of Restitution* § 160 (1937), ruled that the bank received payment from the contractor "subject to the peculiarly equitable claims of the subcontractor plaintiffs, enforceable by way of constructive trust." *Id.* at 834, 406 N.E.2d 672.

The Court agrees with the Trustee. The *Superior Glass* case is distinguishable from the instant case. The bank in that case, acting egregiously, enriched itself at the expense of the subcontractors from whose work it benefitted. As will be discussed below, the circumstances in the instant case are not as clear cut. Thus, Rotman's reliance on the *Superior Glass* case is unavailing.

With respect to the $67,899 paid by Harvard to Vappi, the Trustee argues that no

constructive trust can be established in the monies held by the Debtor's estate. The Trustee cites *In re H & A Construction Co., Inc.*, 65 B.R. 213 (Bankr.D.Mass.1986), a case in which the defendants in preference actions disputed a key element of a preference, namely whether there were transfers of property of the debtor. In *H & A* the defendants argued that the debtor received funds from the projects' owner, Massachusetts General Hospital, "in trust for the specific purpose of distributing them as required by the prime contract and was thus a mere conduit for the funds earmarked for the defendants as subcontractors." *Id.* at 216. In short, the defendants argued that the contract created an express trust, or alternatively, a constructive trust, to prevent unjust enrichment. *Id.*

The court in *H & A* failed to find the existence of an express trust through the device of a standard form of contract. It rejected the defendants' constructive trust argument as well, stating the following:

> A constructive trust is a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other *where the legal title to the property was obtained by fraud or in violation of a fiduciary relation* or where information confidentially given or acquired was used to the advantage of the recipient at the expense of one who disclosed the information.

*Id.* at 217 (citations omitted) (emphasis in original). It then stated:

> While the Court is not unsympathetic to their position, the defendants have failed to establish the existence of a fiduciary relationship. Although the defendants argue that the mandatory language directing H & A to pay its subcontractors from payments MGH made to it accords with a fiduciary relationship and that such a relationship may be determined from the facts of each case *Broomfield v. Kosow*, 349 Mass. 749, 212 N.E.2d 556 (1965), the Court finds that the language of Article 9.5.2 is insufficient to impose fiduciary duties upon H & A. Where as

here, H & A received funds from MGH and commingled them with its own monies, a debtor-creditor relationship comports more closely with the obligation imposed upon H & A by the language of Article 9.5.2 than a trust or fiduciary relationship. As a consequence, the Court concludes that the defendants have failed to meet their burden of proof with respect to the creation of a trust, either express or constructive, and that transfers of the debtor's property took place within the meaning of section 547. *Id.* Emphasizing the absence of case law in Massachusetts and the lack of a so-called builders' trust fund statute, the Trustee urges the Court to follow *H & A*.

## VI. CONCLUSION

■ The Court concludes that even if Vappi breached its contract with Harvard, an assertion the Trustee disputes, such a breach of contract cannot support the relief requested by Rotman. Bankruptcy cases are replete with broken and rejected contracts. In each such situation, one party arguably is "unjustly enriched" at the expense of another. Business failures cause hardships that cannot and should not be rectified by the misapplication of equitable principles permitting the imposition of constructive trusts and the creation of equitable liens. One of the fundamental precepts of our bankruptcy laws is the even-handed treatment of similarly situated unsecured creditors. The protection afforded unsecured creditors should not be jeopardized by adopting an overly expansive interpretation of phrases such as "unjust enrichment" in the absence of compelling evidence of wrongdoing. Accordingly, as the courts in *Mill Concepts, supra*, and *H & A, supra*, recognized, elements of fraudulent conduct must be present to warrant equitable relief.

In the instant case, Rotman has repeatedly used the words fraud, double fraud and false representations. However, despite the fact that this adversary proceeding is almost one year old and has engendered numerous and nasty discovery disputes, Rotman has not submitted by way of affidavits or depositions, any evidence of fraud. It has failed to cite even

one *specific* instance where a named individual intentionally made a promise to pay Rotman, knowing that that promise was false. The signature of Vappi's project manager on Payment Applications 16–20 stating that to the best of his knowledge, information, and belief subcontractors had been paid simply does not, in this Court's view, rise to the level of fraud without more.

Under oath Alfred Rotman stated that the project manager who signed the certifications referred him to Vappi's accounting department when he questioned the timeliness of Vappi's payments to Rotman. Alfred Rotman was unable to give any specific dates with respect to these conversations or fully identify by name and authority the accounting personnel with whom he spoke. When asked what made Rotman's situation different from the situations of other creditors, he mischaracterized the certifications as sworn affidavits, which they are not. Had Alfred Rotman spoken to Harvard's architect, Harvard may have required Vappi to submit sworn affidavits from its subcontractors as the prime contract provided that Harvard had the option of requiring them from Vappi.

Moreover, between November 15, 1989 and September 30, 1990, Vappi paid Rotman $1,671,924 or 95% of the subcontract price. Apparently, Payment Application No. 16 was the first Payment Application in which Rotman did not receive its full compensation in the amount then due of $44,520. Payment Applications No. 17 and 18 reflect reductions in the retainage in the amounts of $2,000 and $3,000, respectively. However, these sums were not paid to Rotman for the electrical work it performed. Likewise, Payment Applications 19 and 20 reflected total electrical charges of $18,379 and $18,787 that went unpaid, despite the Certifications to the best of Vappi's knowledge, information and belief that Rotman and other subcontractors were paid for work they performed. Thus, it is clear to the Court that Rotman has established nonpayment by Vappi, but it has failed to prove fraud.

In sum, the Court concludes that Rotman has failed to establish that it is entitled to a constructive trust or equitable lien on the basis of breach of contract or fraud either with respect to monies withheld by Harvard or with respect to monies paid by Harvard to Vappi prior to the bankruptcy filing. The contract provisions that are set forth in this memorandum are similar to those discussed by the courts in *Erlich v. Johnson Service Co.*, 272 Mass. 385, 172 N.E. 508 (1930), and *In re H & A Construction Co., Inc.*, 65 B.R. 213 (Bankr. D.Mass.1986), and there is no reason to construe such provisions differently than in those opinions. In short, Rotman has established no more than a debtor/creditor relationship with Vappi. Neither the undisputed facts nor the law supports more than that. The principal cases relied upon by Rotman are all readily distinguishable. However, the Trustee's reliance on *Erlich* and *H & A* is persuasive. Accordingly, the Court hereby denies Rotman's Motion for Summary Judgment and allows the Trustee's Motion for Summary Judgment.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall issue.