Gershengorn, J.
This is an action in which the plaintiff, Employers Insurance of Wausau, a Mutual Company (“Wausau”), surety to a contract between the defendant, Town of Northborough (“the Town”) and another, claims entitlement to funds allegedly owed by the defendant under the contract. Among the other allegations in the complaint, the plaintiff alleges that the doctrine of equitable subrogation entitles the plaintiff, as surety, to priority reimbursement for amounts it has paid out, in preference to any rights the Town may have in the funds. With respect to this claim, the plaintiff has filed a motion for summary judgment on the issue of liability, pursuant to Mass.R.Civ.R 56(c). For the reasons stated below, the motion of the plaintiff is DENIED.
FACTS[1]
In early November 1997, the Town and The February Corporation, d/b/a Charlesgate Construction Company (“Charlesgate"), entered into a contract (“the contract”) for renovation of the Zeh Elementary School in Northborough, Massachusetts. The Town appropriated funds for the contract. Pursuant to statute, the Town required that Charlesgate obtain and deliver to the Town two separate bonds, a performance bond and *281 a payment bond, to guarantee completion of the contract and payment of labor and materialmen. Wausau issued the two required bonds, and the bonds were delivered to the Town by Charlesgate. Construction followed from November 7, 1997, until mid-October, 1998, when Charlesgate left the job, and the Town occupied the school building.
On August 26, 1998, Charlesgate submitted a tenth Application for Payment to the Town, totalling $294,488.21.[2] procedure was the same procedure Charlesgate had followed in the submission of its previous nine applications for payment. The Town’s architect reviewed the requisition and put it aside. The Town has occupied and been working on the Zeh school since October 1998.
On September 15, 1998, the Town determined that Charlesgate was in default in its performance of the contract. Nevertheless, the Town chose not to make a claim under the performance bond issued by Wausau. From September 10, 1998, through October 14, 1998, several subcontractors filed direct claims against the Town pursuant to G.L.c. 30, §39F, alleging that Charlesgate failed to pay them. The Town has not paid any of the subcontractors. Subcontractors and material suppliers have, in turn, made claim against the payment bond provided by Wausau. As of April 16, 1999, Wausau had paid $848,147.19 to subcontractors and suppliers under the payment bond.
On September 24, 1998, Charlesgate assigned to Wausau all of its rights to any contract balances due to be paid by the Town. Upon learning that the Town was waiving its right to have Wausau complete the project under the performance bond, but was looking to Wausau to perform under the payment bond, Wau-sau demanded payment by the Town of any remaining contract balances. The Town refused to pay.
The difference between the original contract amount and the amount paid to Charlesgate is approximately $640,000.[3] The Town claims that it is entitled to use this money to pay for the completion of the contract, plus any damages caused by Charlesgate’s breach of the contract.[4] Wausau claims that its performance under the payment bond and the doctrine of equitable subrogation entitle it to preferential payment from this money before the Town deducts any amounts.
DISCUSSION
Summary judgment may be appropriate where, as here, all material facts are undisputed. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The parties do not dispute that if Charlesgate had completed the project per the terms of the contract, the Town would be obligated to pay the money to Charlesgate. It also appears undisputed that if Wau-sau had been required to complete the project under the performance bond, then the doctrine of equitable subrogation would entitle it to the funds. See generally Prairie State Bank v. United States, 164 U.S. 227 (1896). Finally, the parties agree that had Charlesgate completed the project and Wausau performed under the payment bond, then Wausau would be subrogated to Charlesgate’s position and would therefore be entitled to the money. See generally Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404 (1908). The uniqueness of the situation here lies in the fact that Charlesgate did not complete the project per the terms of the contract. Wausau performed under the payment contract, but Wausau was not called upon to perform under the performance bond. No case, apparently, has touched upon such a situation.
If Wausau were not implicated by performance under one of the bonds, then the Town would be entitled to deduct its damages from the amounts otherwise payable to Charlesgate under the contract. United States v. Munsa Trust Co., 332 U.S. 234, 239 (1947); Superior Glass Co., Inc. v. First Bristol Co. Nat. Bk., 380 Mass. 829, 833 (1980). Wausau contends that because it had to perform under the payment bond, the doctrine of equitable subrogation entitles it to the funds held by the Town in preference to the Town’s deduction of damages. This argument falls.
“Subrogation is an old term, rooted in equity, and semantically stemming from words meaning ‘ask under.’ ’’ National Shawmut Bk. of Boston v. New Amsterdam Gas Co., 411 F. 2d 843, 844 (1 st Cir. 1969) (applying Massachusetts law). The equitable principle is that when, pursuant to an obligation, one fulfills the duties of another, he is entitled to “step in the shoes” of and assert the rights of that other against third persons. Id. Thus, a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed by a third party. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137 (1962). It has been held that when a surety “pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it; in the shoes of laborers and materialmen who have been paid by the surety — who may have had liens; and, not least, in the shoes of the government, for whom the job was completed.”[5] Wausau relies on this principle, together with the rule that the doctrine of equitable subrogation applies whether the surety performs under either the payment bond or the performance bond, to argue that it, as surety, succeeds to a preferential interest in the funds.[6] The flaw in this argument is exposed by an examination of the right, or rights, that the contractor, laborers and materialmen, and government have in a case such as this.
It is clear that when a surety pays under either a payment or a performance bond, the surety becomes subrogated to the rights of the contractor. Where the contractor has not completed performance under the contract, however, the contractor does not, by statute, have the right to be paid out of funds needed to pay for completion of the contract. G.L.c. 30, §39K. To the *282 contrary, upon submission of a periodic request for payment, the awarding authority in such a case may deduct from a progress payment “a retention based on its estimate of the fair value of its claims against the contractor. Id. Likewise, an awarding authority may deduct from final payment ”a retention based on its estimate of the fair value of its claims against the contractor and of the cost of completing the incomplete and unsatisfactory items of work ..." id. If the statute were not decisive, case law is: “Where an owner retains a portion of the payments due on a construction contract, it may deduct offsetting claims against the contractor, even though unrelated to the contract: and there is authority that the offset may be asserted against a surety who has paid subcontractors." Superior Glass Co., 380 Mass. at 833. In a case such as this, where the Town claims that significant work is incomplete or unsatisfactory, equitable subrogation does not give Wausau much by virtue of Charlesgate’s rights.[7]
By performing under the payment bond, Wausau became subrogated to the rights of the subcontractors. National Shawmut Bk. of Boston, 411 F.2d at 845. To the extent that the subcontractors had enforceable claims against the Town, Wausau may enforce recovery in compensation for the payments it made under the payment bond. The applicable statute, G.L.c. 30, §39F, indicates that when they are not paid by the contractor, subcontractors may make direct demands against the Town, but that the payment of such demands “shall be made out of amounts payable to the general contractor . . . and out of amounts which later become payable to the general contractor . . .” G.L.c. 30, §39F(g). As discussed above, any amount payable to the contractor must take into account the fair value of the claims of the awarding authority as well as the cost of completing incomplete and unsatisfactory items of work.[8] Thus, Wausau gains no additional rights by subrogation to the rights of the subcontractors than it had by subrogation to the rights of Charlesgate.
The right of the government that a surety succeeds to is the “right to apply to the cost of completion the earned but unpaid progress payments in its hands at the time of default.” National Shawmut Bk. of Boston, 411 F.2d at 848. Accord United States v. Munsey Trust Co., 332 U.S. 234, 239 (1947). It follows that where the surety has not been required to perform under a performance bond and has not, therefore, incurred the cost of completion, the right to apply contract funds to the cost of completion remains with the government.
Wausau points to Pearlman and Henningsen for the proposition that subrogation applies whether the surety’s bond is for payment or performance. These cases are inapposite. In both Pearlman and Henningsen, the Court held that the doctrine of equitable subrogation entitled the surely to funds held by the government regardless of the fact that the surety had performed under a payment bond and not under a performance bond. Pearlman, 371 U.S. at 139; Henningsen, 208 U.S. at 410-12. In both cases, however, the project that was the subject of the contract had been completed, leaving nothing for the government to apply the funds to. See Pearlman, 371 U.S. at 134; Henningsen 208 U.S. at 410. In tins case the Town has retained the burden of completion, and equity entitles it to retain the funds for this purpose.
This is not to say that a surety in circumstances such as these has no interest in the money; to the contrary, it is clear that upon completion of the project per the terms of tire contract, and upon deduction of any claims by the Town, the surety would have an equitable interest in any remaining funds, arising out of its performance under the payment bond. Henningsen, 208 U.S. 404 (1908); Superior Glass Co., 380 Mass. at 833.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for summary judgment is DENIED. Accordingly, it is further ORDERED that the defendant may use the contract balance for completion of the Zeh School contract, per its terms, and for payment of any other rightful claims, and that the plaintiff will be entitled to any remaining funds in reimbursement for the payments made under the payment bond.

Unless otherwise specified, all facts herein are taken from the statements of undisputed facts submitted by the parties pursuant to Superior Court Rule 9A(b)(5).

The parties apparently dispute whether this requisition was a formal or “pencil” requisition. Although perhaps relevant for determination of the other claims in this suit, for purposes of this motion the distinction is immaterial.

The exact amount is immaterial because the parties are seeking summary judgment on the question of liability alone, without respect to amounts payable.

Wausau also contends, and the Town denies, that this money is being used for work not specified in the contract. This is an ancillary issue that is not material to this motion.

National Shawmut Bk. of Boston, 411 F.2d at 845. Accord Ram Constr. Co., Inc. v. American States Ins. Co., 749 F.2d 1049, 1055 (1984) (applying Pennsylvania law). “The subro-gation right is an expansive one, and when the surety has paid claims, it succeeds not only to the interests of the labor and materialmen but to those of the municipality as well.” Id.

See Pearlman, 371 U.S. at 139. "These two cases . . . establish the surety's right to subrogation in such a fund whether its bond be for performance or payment.” Id. (discussing Prairie State Bk. v. United States, 164 U.S. 227 (1896), and Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404 (1908)).

Other jurisdictions seem to be in accord. See, e.g., United States v. Munsey Trust Co., 332 U.S. 234, 241 (1947); Atlantic Refining Co. v. Continental Casually Co., 183 F.Sup. 478, 486 n.9 (W.D. Pa. 1960). To the extent the Supreme Judicial Court has addressed this issue, it is in agreement with these decisions. See Superior Glass Co., Inc. v. First Bristol County Nat. Bk., 380 Mass. 829, 833 (1980).

G.L.c. 30, §39K, quoted above in relevant part. See also G.L.c. 30, §39F(e). "[Direct payments are not to include] any amount . . . retained by the awarding authority as the estimated cost of completing the incomplete or unsatisfactory items of work ..." Id.